### THE EARL OF DUNMORE.

#### (District Court, E. D. New York. January 22, 1903.)

**1. SHIPPING—LIABILITY OF SHIP FOR INJURY OF STEVEDORE—FAILURE TO GIVE WARNING OF DEFECTS.**

Where it was known by the officers of a ship that a hatch covering was so constructed, or was in such condition, that if the hatch was opened in the usual way it would fall, the failure to give warning of the danger to stevedores engaged in loading the vessel was negligence, which rendered the ship liable to an employé of the stevedores for an injury resulting from the falling of the hatch with him into the hold while he was removing the cover in the customary way.

In Admiralty. Action for injury of stevedore.

James G. Cropsey, for libelant.
Wing, Putnam & Burlingham, for claimant.

THOMAS, District Judge. The ship was receiving cargo at her dock in the East River, and had been so engaged for two or three days before the accident occurred. During such time the cargo, so far as concerns hatch No. 3, had been received through the after portion thereof, and the libelant had been connected with this work. On the morning of the accident, the necessities of the work required that the forepart of the hatch should be uncovered, and while the libelant was standing on the port side thereof, removing the hatch cover adjoining the crosspiece, all of the forward part of the hatch fell into the hold, carrying the libelant, and it is for the serious injury then received that the present action is brought.

The hatch was constructed as follows: A piece of iron rested athwartships on the coaming. On each side of this was a separate central fore and after piece, made of wood. One end of each piece rested in the coaming, and the other end fitted against a crosspiece with intended sufficient play to permit its removal. The libelant produced evidence that the crosspiece was bent, and several witnesses testify that on the night of the accident, when an attempt was made to put the forward fore and after in place, it was not sufficiently long to reach from the coaming to the crosspiece, lacking from an inch to two inches, and that before it could be brought into support, it was necessary to insert the aft fore and after, so as to press the cross-

piece forward, and some of the witnesses stated that wedges were also placed at the ends of the forward fore and after to keep it from sliding. In other words, the libelant's claim in this regard is that if the forward fore and after were pushed into the slot in the coaming, as far as it would go, the other end would not reach to the crosspiece, and that if it were pushed into the crosspiece as far as it would go, the forward end would not reach to the coaming. The evidence of the claimant is to the effect that the crosspiece was perfectly straight, that the fore and after was sufficiently long, allowing only enough play to permit it to be raised easily out of position. Claimant's evidence further is to the effect that on the morning of the accident the ship carpenter told one of libelant's fellow servants, connected with the stevedore's work, not to remove the forward part of the hatch unless the aft fore and after was in place. The libelant was not present at the time, and several people who were there state that nothing of the kind occurred. The very fact that the carpenter states that he gave this warning indicates that he knew that it was unsafe to remove the forward part of the hatch unless the aft fore and after was in place, and the ship's officer also knew this fact. Why was it necessary that it should be in place? The claimant's contention, based upon the evidence of the carpenter and the ship's officer, is that, while the crosspiece was true, yet that if an attempt were made to remove the fore hatch covers the pressure would fall upon the crosspiece and cause it to bend, unless the aft fore and after were in place to hold it true. Adopting, then, the proposition most favorable to the claimant, as the probable explanation of the accident, the structure was such that in the removal of the forward part of the hatch, in such manner and with such force as stevedores would be likely to use, there was danger that the crosspiece would recede from its true position, and allow the forward fore and after to fall. The claimant urges that the carpenter gave notice of this; but if such condition existed, and if warning was necessary, it should have been brought to the notice of the contracting stevedore, or their proper representative, and the evidence shows that it was not made known so that even the foreman in charge of the libelant's gang knew of it. In fact, such foreman denies that any such statement concerning it was made in his presence. The claimant further urges that the libelant should have known without warning that the removal of the forward part of the hatch would result in the crosspiece yielding, and that it was gross negligence on his part to make the attempt. But there is no sufficient evidence that hatches are usually so constructed as to bring about this result. On the other hand, the hatch frame should be, and usually is, constructed so that such injurious pressure is not possible. The contention that a ship may furnish a stevedore a hatch so constructed that it will fall unless uncovered in a certain order is not approved. The order claimed in this action may be reversed by the claimant next to appear in a similar action. Although the libelant was in the employ of the stevedore, yet the ship owed the stevedore and his men the duty of giving proper warning that the hatch would fall unless dismantled

in the particular manner now pointed out. As the construction was such that the opening in the usual way would result in the hatch falling, and as no such warning was given, and the stevedore was not bound to anticipate the danger, the claimant was negligent, and for the injury which resulted the libelant should recover the sum of $3,000.