FREDERICK LEYLAND & CO., Limited, v. HOLMES.

(Circuit Court of Appeals, Fifth Circuit. March 5, 1907.)

No. 1,590.

**1. SHIPPING—INJURY TO STEVEDORE—DUTY OF VESSEL.**

The owners of a vessel owe a personal duty to the members of a stevedore's gang employed to work thereon to provide reasonable security against danger to life or limb, and to warn them of any latent danger caused by the ship, or for which the ship is responsible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 349, 350.]

**2. SAME—LIABILITY OF VESSEL—DEFECTIVE HATCH COVER.**

In a suit by a stevedore's employé to recover from a vessel for a personal injury caused by the falling of a hatch cover, precipitating him into the hold, it was shown that, when in the course of his duty he went to remove the cover which had been closed by the vessel, or by those for whom she was responsible, he was not warned of any danger; that he went upon the hatch, when, without fault or negligence on his part or on the part of his fellow laborers, the supports immediately collapsed without apparent cause. *Held*, that such evidence was sufficient to make a prima facie case, which, unless overcome by countervailing evidence, entitled him to recover.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 349, 350.]

Appeal from the District Court of the United States for the Eastern District of Louisiana.

Wm. C. Dufour and H. Generes Dufour, for appellant.

John D. Grace, for appellee.

Before McCORMICK and SHELBY, Circuit Judges, and NEWMAN, District Judge.

PER CURIAM. The learned judge who sat in the court below placed on record a memorandum of his reasons for refusing a new trial, which we here quote in full:

"PARLANGE, District Judge. I shall state briefly my reasons for refusing a new trial.

"The first specification of the motion for a new trial is an assertion that the court shifted the burden of proof to the claimant and thereby committed error. That specification is entirely without foundation. When stating orally my reasons for decreeing in favor of libelant, I said that he had, in my opinion, fully met the burden of proving affirmatively the vessel's negligence and his own damages. Libelant clearly and distinctly proved by the testimony of several eyewitnesses the circumstances and the cause of

the accident. Unless there is reason for disbelieving these witnesses, or unless their evidence is outweighed by countervailing proof, it is plain that the case is with the libelant. These witnesses were not impeached. They stood well the test of cross-examination. Their testimony was not inconsistent with probability, and showed no inherent weakness. If it was said that it must be assumed, entirely without proof, that they were so biased towards libelant as to commit perjury, because of the mere fact that they, as well as himself, were longshoremen, the reply would be that such assumed bias would be offset by the bias towards the ship which the claimant's two witnesses would also have to be assumed to have labored under.

"The claimant produced only two witnesses, the first and second officers. They did not see the accident. The sum and substance of their evidence is the assertion by them that the 'fore and after' was safe, and has not been repaired. They admit that the accident happened, but they make no explanation with regard to its cause. The first officer says that the hatch was closed in Liverpool by stevedores. He cannot tell whether an officer was present at Liverpool to see that the hatches were properly put on. He admits that the hatches are often opened by the crew to clean the holds out. He testifies that 'he never knew' that the burden piece was sprung on the day of the accident. I can find but little in his evidence which can be of any benefit to the vessel. The second officer admits having a very bad memory. Being asked whether any repairs have been made to the burden pieces since he has been on the ship, he replies: 'None that I know of.' On one occasion it was necessary to straighten a burden piece on one of the hatches with block and tackle; but he cannot tell when this took place, except that it must have been within three years, because he had not been three years on the vessel. There is but little in his evidence of benefit to the claimant. There are two experts in the case. Mr. Malochee and Capt. Morse, both excellent men, who, beyond all question, testified absolutely what they believed to be the truth. But when Mr. Malochee's testimony is analyzed closely, as I have done, it will be found that it is not nearly so strong in favor of the vessel as the learned counsel for the claimant has contended. Besides Mr. Malochee has admitted frankly his lack of familiarity with hatches and with matters concerning ships. This was the first occasion on which he has viewed a hatch for the purpose which was required of him in this case. On the other hand, Capt. Morse, a man of equally high standing with Mr. Malochee, and much older and of far greater experience with vessels, who was a ship carpenter by trade and a builder of wooden and iron vessels, who was for 20 years steamship superintendent for the Southern Pacific, testifies unhesitatingly, after viewing the hatch and the 'fore and after': 'It was bent so that I would not use it in that condition. I did not consider it safe.' It is clear, therefore, that the libelant has proven his case by a large preponderance of evidence.

"While, as I have already said, I did not, when deciding the case orally, say that the accident had shifted the onus of the proof of negligence to the claimant, I did say incidentally that, besides the affirmative proof made by libelant, the cause was clearly one in which the doctrine of 'res ipsa loquitur' applies with full force. And I do not see how there can be any doubt on that point. It is doubtless true—in fact, it is familiar and elementary law—that, as a general rule, negligence will not be presumed from the mere happening of an accident. I have very often had occasion to apply the rule in master and servant cases, in which cases there are special reasons—which need not now be gone into—for the application. But there is an exception to the rule which is as familiar as the rule itself.

"The A. & E. Enc. Law (2d Ed.) verbo Negligence, vol. 21, p. 513, after stating the general rule, says: '* * * It is proper, however, to state in a general way that wherever injuries occur in the conduct of operations which common experience has shown can be safely carried on with the exercise of reasonable vigilance, judgment, and care, the mere happening of injuries will be regarded as sufficient to warrant the submission of the question of negligence to the jury'—numerous cases cited. Judge Brown, in Warn v. Davis Oil Co. (D. C.) 61 Fed. 632, said: 'This ruling is based upon the principle of

wide application in the law of torts, that injuries which do not ordinarily happen when reasonable and proper care is taken to avoid them, afford a presumption of negligence,' etc.  See Mr. Justice Lamar, in Tolsen Case, 139 U. S. 555, 11 Sup. Ct. 653, 35 L. Ed. 270.  See Judge Morrow, in The Joseph B. Thomas (D. C.) 81 Fed. 578, and especially the same case affirmed in the Circuit Court of Appeals (86 Fed. 658, 30 C. C. A. 333, 46 L. R. A. 58), and the cases and authorities there cited.

"I deem it needless to cite other authorities on such a point.  The burden of proof never shifts, either in a civil or a criminal case, notwithstanding loose language which may be found in the books.  But when a prima facie case is made, judgment will then be rendered against the opposite party, unless he goes forward with countervailing proof which overcomes the adversary's prima facie case.  This is what is sometimes erroneously termed the shifting of the burden of proof.  Therefore the court did not, and could not, under its very distinct views of the question of law involved, have said. that the accident shifted the burden of proof of negligence to the claimant.  But it is certain that there is absolutely no proof that the libelant was in any way negligent.  It is equally certain that a vessel is bound to have her hatches in such condition that her stevedores, invited by her to come on board, can open the hatches without danger to life or limb, provided they use reasonable care and prudence.  It is also well settled that a vessel is bound to give notice to the stevedores of a latent danger caused by the ship or for which the ship is responsible.  'The owners of a vessel owe a personal duty to the members of the stevedore's gang to provide reasonable security against danger to life or limb.'  Judge Morrow, in The Joseph B. Thomas, affirmed by the Circuit Court of Appeals, cited supra.  And it is also very certain that, when it is shown that a stevedore is called by the vessel to open her hatches, which were closed by her, or by persons for whom she is responsible, and that the stevedore is not notified of any latent danger, and he goes on the hatch and undertakes to open it, using reasonable care and prudence, and immediately, and without any fault or negligence on his part or on the part of his fellow laborers. the supports of the hatches collapse without apparent cause, and the stevedore is precipitated into the hold, and he is severely injured, he will be held to have made out at least a prima facie case entitling him to recover, unless the opposite side then goes forward with the evidence and overcomes the stevedore's prima facie case.

"The damages awarded are moderate, in view of the evidence.  No attempt was made to contradict the testimony of the libelant's doctor or the libelant's own testimony on the question of his injuries.  No medical examination of the libelant's person was sought by the claimant.  I do not see how the claimant, if it conceded arguendo its liability, could, under the evidence, reasonably contest the amount awarded as damages."

We have heard with interest the able oral argument of the proctor for the appellant, and carefully read his printed brief, and have fully examined all of the testimony set out in the transcript of the record, and find no reason therein for reversing or qualifying the action taken or the views expressed by the learned district judge as above shown, in this case.

Therefore the decree appealed from is affirmed.