## THE THOMAS CRANAGE.

### (District Court, W. D. New York. September 6, 1911.)

**1. SHIPPING (§ 84*)—LIABILITY OF VESSELS—INJURY TO STEVEDORE—NEGLIGENCE OF FELLOW SERVANT.**

A vessel which was seaworthy and properly equipped is not responsible for an injury to a stevedore, if such injury was caused by the negligence of himself or a fellow servant engaged in the same line of work.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 349–351; Dec. Dig. § 84.*]

**2. SHIPPING (§ 84*)—LIABILITY OF VESSEL FOR INJURY TO STEVEDORE—NEGLIGENCE.**

In an action by a stevedore to recover for an injury caused by the falling of a section of the hatch cover upon him while he was shoveling grain in the hold, evidence showing that the crew removed certain sections of the hatch cover which they piled on adjoining sections, left in place, without fastening the same in any way, that such sections were not moved by the stevedores, and that the machinery used in unloading caused the vessel to vibrate, is sufficient to establish that the vessel did not exercise proper care to provide a safe place for the stevedores to work, and that such negligence was the cause of the injury.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 349–351; Dec. Dig. § 84.*]

**3. NEGLIGENCE (§ 121*)—EVIDENCE—DOCTRINE OF RES IPSA LOQUITUR.**

The application of the principle of res ipsa loquitur is not confined to cases where the relation between the parties was a contractual one, or of carrier or bailee, or where the injury was sustained on a public highway.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 217–228; Dec. Dig. § 121.*]

**4. NEGLIGENCE (§ 134*)—ACTIONS FOR NEGLIGENCE—EVIDENCE.**

The facts and circumstances surrounding an occurrence from which personal injury results, and the nature of the act, not infrequently determines the rule by which the asserted negligence may be established.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 267–273; Dec. Dig. § 134.*]

**5. DAMAGES (§ 131*)—PERSONAL INJURY.**

A stevedore awarded $1,000 damages for an injury which caused him considerable pain and suffering for four or five weeks, and loss of longer time from his work, but which was not likely to be permanent.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 357–371; Dec. Dig. § 131.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit by Henry Gilbert against the steamer Thomas Cranage. Decree for libelant.

John J. Kane and Charles W. Strong, for libelant.

Brown, Ely & Richards and Hoyt, Dustin, Kelley, McKeehan & Andrews, for respondent.

HAZEL, District Judge. The libelant sustained injuries on June 13, 1910, at about half past 10 o'clock in the forenoon while at work shoveling grain in the lower hold of the vessel Thomas Cranage by the fall upon him of a section of a wooden hatch cover. At the time of the mishap the steamer was being unloaded with the assistance of a movable elevator, which had three legs and into which the grain was shoveled by steam shovel, the stevedores in the hold scooping the grain to the shovel from which it was drawn to the elevator. The libel alleges that the crew carelessly and negligently let fall through the hatchway into the hold a section of the hatch cover, which struck the libelant while at work therein. The testimony principally indicated that various sections of the hatch cover of hatch No. 9 had been improperly piled by the crew early in the morning before the unloading began, and the libelant at the hearing, over the respondent's objection, was permitted to amend the libel by adding thereto an allegation of negligent piling of the hatch covers on condition that the respondent, if it wished, might take further testimony to cover new matter.

Libelant's testimony shows that three or four sections of hatch cover No. 9 were piled in about the center of the hatch one on top of the other, the lower section remaining in position on the coamings; that the several sections overlapped the opening of the hatch, and, while the work of unloading was in progress, a section dropped into the hold and upon the libelant. It is not directly shown what primarily caused the hatch cover to fall. The testimony is conflicting as to whether it fell owing to negligent piling or to actual handling by the crew. The first and second mate and the watchman of the steamer testified that the various sections of the hatch cover were regularly and properly piled in series, one cover on another, each section being evenly placed on an adjoining section which rested on the coamings, and in no instance were more than two parts of the cover piled together. There was evidence showing that during the unloading, and about two hours before the accident, libelant's fellow stevedores rigged up a strongback consisting of a piece of timber eight feet long, and weighing about 175 pounds, and placed it lengthwise over the hatch opening, and fastened ropes and blocks thereto which were connected with the steam shovel in the hold. The strongback was placed a little to the starboard of the middle of the hatch, and the respondent claims that in putting it in place the stevedores shifted the pile of hatch covers, which had previously been properly and safely placed by the crew, or in some manner unknown displaced from the pile a section, which later dropped into the hold.

[1] If such was the fact, the libelant cannot recover, for the rule in admiralty is well settled that the owner of a vessel which was sea-

worthy and properly equipped is not responsible for injury to a steve-dore if such injury was caused by the negligence of himself or a fel-low servant engaged in the same line of work. Bettis v. Frederick Leyland & Co., Ltd., 153 Fed. 571, 82 C. C. A. 525; The Ranza (D. C.) 156 Fed. 373.

[2] By libelant's testimony, however, it is satisfactorily shown that the stevedores who handled the strongback did not move or come in contact with any hatch covers, nor is there any evidence from which it may be inferred that the rigging during the unloading of the boat and before the accident came in contact with or in any way disturbed the pile of hatch covers which are the subject of this controversy, and a determination that libelant's fellow workmen displaced or interfered with them would be purely speculative. Concededly the hatch covers were not fastened together. It was the duty of the respondent to use diligence in providing the libelant with a reasonably safe place to work, and, in view of the testimony of the witness Jolly, the second mate of the steamer, that the swell from passing boats would slightly move the vessel, and that the machinery in operation during the un-loading of the grain caused the vessel to vibrate, it would seem that due diligence had not been exercised, and that the respondent had failed in its duty by merely piling the parts of the hatch cover without securing them by a fastening device. That the hatch cover dropped from where it lay by reason of vibratory motion is not improbable in view of their length and narrow width, each section being 5 feet 6 inches long, and 2 feet 10½ inches wide, and 3 inches thick, and weighing about 100 pounds. Considering that they were unfastened, and that the vibrations of the machinery might shift them, they ob-viously became a menace to the safety of the scoopers working in the lower hold, and who were required to follow the steam shovel in its operations of scooping the grain to the elevator. The rapid man-ner in which the stevedores are obliged to perform their work does not permit them to pay any attention to the hatch covers, and there-fore the respondent was bound to exercise such "vigilance as is pro-portional to the danger to be avoided, judged by the standard of com-mon prudence and experience." The Rheola (C. C.) 19 Fed. 926. No one saw the hatch cover at the moment it fell, and respondent claims that the burden of proof rests upon the libelant to show what actually caused it to fall; but I think the situation and the circumstances are such that it may fairly be presumed that, if the sections had been prop-erly piled and secured, they could not have been irregularly and un-evenly placed either by the crew or the stevedores, nor could they have been displaced by the movement of the boat. The fact that the section dropped into the hold is persuasive evidence of improper and insecure piling, and consequent negligence on the part of the respond-ent.

[3] The application of the principle of res ipsa loquitur is not con-fined to cases where the relation between the parties was a contractual one, of carrier or bailee, or where the injury was sustained on a public highway (Griffen v. Manice, 166 N. Y. 193, 59 N. E. 925, 52 L. R. A. 922, 82 Am. St. Rep. 630), and where the source of the occurrence

which results in injury to another may reasonably be attributed to the plaintiff as well as to the defendant, or where the cause which induces the injury does not solely rest on the conduct or knowledge of the defendant, the rule of res ipsa loquitur ordinarily is not applied.

[4] The facts and circumstances surrounding an occurrence from which personal injury results and the nature of the act not infrequently determines the rule by which the asserted negligence may be established. But it is not necessary to decide that this is a case of res ipsa loquitur. The vessel and hatch cover were under the exclusive management and control of the officers and crew. The scoopers were not obliged to lift the covers from the hatches, or to remove them from where they were placed, or to pile them evenly and securely. The vessel retained the sole right to protect the men who were engaged in unloading the cargo while they were at work in the hold from the sudden falling of hatch covers or sections thereof or any insecurity in their position. The vessel's crew was the alter ego of the owner, who became responsible for its failure to furnish to the stevedore a safe place to work, and for its negligence and insecure piling of the hatch covers.

[5] As to damages: The libelant was struck on the back and hip by the cover in its fall of 21 feet. He was assisted from the hold and walked two miles to the Emergency Hospital for medical treatment, and then went home to bed, where he remained one week. He was then removed to the Sisters' Hospital, where he remained another week, during all of which time he was attended by his physician. He is 32 years old, and was disabled for a time from following his usual occupation. Dr. Haley, his physician, testified that his injuries consist of traumatic lumbago and traumatic sciatica. His earning capacity is about $12 per week. While he was severely hurt by the blow, suffered pain and discomfort for four or five weeks, it is not satisfactorily shown that he is permanently injured. I think the probabilities are that he will recover within a short time his full strength and vigor, and will be able to pursue his usual work of stevedore. It does not appear what amount was expended by him for medicine or medical attendance. I think an allowance of $100 for loss of wages and $900 additional would adequately compensate him for the pain and suffering endured, and also defray his medical attendance.

A decree may be entered accordingly, with costs.