## GRAYS HARBOR STEVEDORE CO. v. FOUNTAIN et al.

(Circuit Court of Appeals, Ninth Circuit. April 27, 1925. Rehearing Denied June 2, 1925.)

No. 4429.

**1. Shipping ⊂⟩84(2)—Duty of owner of vessel to stevedores, stated.**

Owner of vessel owes to stevedores engaged upon vessel the duty of exercising reasonable diligence to furnish a reasonably safe place in which to perform services, a reasonably safe passageway to and from their work, and appliances such as are reasonably suited to purpose for which they are used and are customary and usual for similar ships, and to give stevedores notice of any latent dangers or defects in ship or appliances.

**2. Shipping ⊂⟩84(2)—Failure of owner to advise stevedore of dangerous condition of manhole covers held actionable negligence.**

Owner of ship, who failed to inform stevedore that manhole covers which stood at angle of 70 degrees, propped one against the other, were not supplied with hook, latch, rope, or other device or means of sustaining them in position, though manholes on other ships and those to which stevedore was accustomed were so constructed that covers would either lie back on deck when opened or would open at such an angle that they could not fall, so that stevedore was not advised of the latent danger of manhole covers on such owner's ship, *held* negligent and liable for injuries sustained by stevedore when manhole cover fell upon him.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Libel by Joseph Fountain against the United States and the Grays Harbor Stevedore Company. From a decree for libelant (298 F. 939), against respondent Stevedore Company, it appeals; and from that portion of decree dismissing the United States, libelant appeals. Remanded, with instructions.

The appellee, Joseph Fountain, hereinafter called the libelant, received personal injuries while working as a stevedore in loading the vessel West Ison then docked at the port of Aberdeen, Wash. The vessel was being loaded by the appellant, which hired all the longshoremen who were engaged in that service. At the time of the injury the hatches over holds 4 and 5 in the after part of the ship and the manholes leading into said holds had been opened. The libelant first reported for work shortly before 8 o'clock in the evening, and as he started down the manhole into hold No. 5, the cover of the manhole fell upon him, causing injury to his right hand. The manholes on the ship

5 F.(2d)—25

were constructed in pairs with their covers opening back to back and were so close together that when one was open the cover thereof almost completely covered the other. When both were open the covers stood at an angle of about 70 degrees, propped the one against the other. They were not supplied with hook, latch, rope, block, or other device or means of sustaining them in position. They were of iron, each weighing about 50 pounds. It was necessary that both the manholes to holds 4 and 5 should be open while the cargo was being stowed in those holds, for a bulkhead between the two holds prevented the men from passing from one to the other.

The libel alleged that the shipowner was negligent in furnishing unsafe and unseaworthy manhole covers, and that the appellant was negligent in failing to furnish the libelant a safe place in which to work, and a safe passage to his work, and in directing covers of the manholes to be opened without using some device to prevent them from falling, and without giving the libelant warning of the conditions. The court below found that the vessel was seaworthy and that the hatch covers were safe when closed, and dismissed the libel as to the owner; but held that the hatch covers were unsafe when open and left unfastened, and that the stevedore company was negligent in failing to fasten the same or to warn the libelant of the danger. A decree was rendered in favor of the libelant against the stevedore company. The stevedore company appeals, and the libelant appeals from that portion of the decree dismissing the owner.

Theodore B. Bruener, of Aberdeen, Wash., for appellant and cross-appellee.

James R. Gates, of Seattle, Wash., for appellee and cross-appellant Fountain.

Ira Bronson, J. S. Robinson, H. B. Jones, and Robert E. Bronson, all of Seattle, Wash., for the United States.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The evidence is without dispute that the manholes on the ship were of an extremely unusual construction. No such arrangement of manholes and covers thereto had been seen in the harbor of Aberdeen. The stevedores had never known manholes that required that the covers be fastened when open. The work boss for the appellant testified that he had never had occasion to take any precaution against the falling of

manhole covers. The evidence was that standard manholes were so constructed that the covers would either lie back on the deck when opened or would open at such an angle that they could not fall. Capt. Numa, the chief officer of the ship, admitted that the manholes were unsafe when open while in port and while discharging and receiving cargo, and he testified that on previous occasions he had cautioned stevedores to use blocks or wedges as a protection, and that when at sea when a pair of manholes were open at the same time the covers would be tied by means of a lanyard; and that while in port he would drop wedges between the hinges of the two covers. Capt. Ames, local inspector of steam vessels, testified that he had never seen manholes placed together as they were on the Ison; McNaught, marine surveyor, testified that he had never seen such construction and that this was an oversight in the designing. Ingham, assistant naval architect, testified that he had never constructed or seen ships with the manhole covers back to back; that a suitable hook and eye would have held these covers together firmly. Nordstrum, naval architect, testified that the arrangement of the manholes was undesirable, that he had never seen two manholes thus placed back to back, that he would consider the covers unstable, liable to fall, and that this might be, prevented by a pair of rings on either side so that a lashing could be passed through them. All of these witnesses who so testified were witnesses for the owner. The testimony makes it clear, we think, that these manholes were mantraps and they constituted a latent danger of which the stevedores were unadvised. There had been nothing in their experience to lead them to look for peril from manhole covers, and while the master stevedore in pursuance of his duty inspected the winches, the hatches, the passageway, and the machinery to be used by the stevedores, it is not surprising that he paid no attention to the manholes. The libelant, when he went to work, entered one of them without giving the covers even casual inspection. He testified that he saw the covers standing back to back, but he though there were hooks on them or something to hold them, and that there was nothing apparent to him to suggest danger. His whole past experience had led him to believe that no danger from manhole covers was to be apprehended. The officers of the ship knew that both the manholes would be open during the loading. They knew from their past experience that the vibration of the machinery incident to loading might cause them to fall and that it would be necessary to use some device to prevent their falling. They gave to the stevedores no intimation of that danger, and they furnished no device to be used to forestall it. But the owner says, in answer to this, that hatch cover wedges lay visible upon the deck and that they could have been used. The mere presence of those wedges, if indeed they were then visible and had not been covered by the deck load of lumber which had been received during the day, furnished no suggestion that they were designed to be used or might be used for any purpose other than that for which they had been provided.

[1, 2] The owner of a vessel owes to stevedores engaged upon the vessel the duty of exercising reasonable diligence to furnish a reasonably safe place in which to perform their services and a reasonably safe passageway to and from their work and appliances reasonably suited to the purpose for which they are used and such as are customary and usual for ships of that kind, and it is the duty of the shipowner to give such stevedores notice of any latent dangers or defects in the ship or the appliances. These general principles are well established and are not questioned. Hamburg-Amerikanische Packetfahrt A. G. v. Gye, 207 F. 247, 124 C. C. A. 517; The Chicago (D. C.) 156 F. 374; Frederick Leyland & Co. v. Holmes, 153 F. 557, 82 C. C. A. 511; The Joseph B. Thomas, 86 F. 658, 30 C. C. A. 333, 46 L. R. A. 58; The William Branfoot, 52 F. 390, 3 C. C. A. 155. In The Red Jacket (D. C.) 110 F. 224, it was held that a ship is liable to a stevedore for injuries sustained while taking off the covers of a hatch by a section falling in because of an athwartship sprung out of line so that when one of the covers was taken off it failed to support the remaining covers, the defect being one that inspection would have shown. In the Earl of Dunmore (D. C.) 120 F. 858, where the officers of the ship knew that a hatch covering was so constructed that if the hatch were opened in the usual way it would fall, it was held that the failure to give warning of the danger to a stevedore was negligence which rendered the ship liable for injury resulting from the falling of the hatch while he was removing the cover in the customary way. In The Colon, 249 F. 460, 161 C. C. A. 418, the ship was held liable for injury to a stevedore resulting from a dangerously defective hatch cover furnished by it to the stevedores for their use. In Citta di Palermo, 230 F. 602, 145 C. C. A. 12, the court said, "The stevedores had a right to assume that the covers as

placed when the ship was turned over to them were properly placed, and, as they were not warned to the contrary, they were not guilty of negligence in using them without close inspection," and the court held that the peculiarities of the hatch covers constituted a latent danger so far as the stevedores were concerned. A similar case is The Thomas Cranage (D. C.) 189 F. 1003.

We think that the court below correctly found that the appellant was negligent, but we are of the opinion that the ship also was negligent in the respects above indicated and is concurrently liable for the injuries to the libelant. The cause is remanded, with instruction to modify the decree accordingly.