Argued October 14, 1930; modified March 10, 1931

# *WYCHGEL v. STATES STEAMSHIP CO. ET AL.
### (296 P. 863)

_____

* On appeal to the United States supreme court.

*Erskine Wood*, of Portland (Wood, Montague & Matthiessen, of Portland, on the brief), for appellant.

*B. A. Green*, of Portland, for respondent.

BEAN, C. J. The plaintiff Jac Wychgel was employed as an able-bodied seaman on the steamship California, owned by the States Steamship Company,.

which was sailing ships from Portland to the Orient and back. He was injured by falling through a hatchway when the steamship California was fastened to the dock at Tingsau, Manchuria, China. He was placed in a hospital in Japan and on his return to Portland brought an action at law against the States Steamship Company. He sustained a fracture of the eighth rib and a fracture of the left scapula or shoulder blade, so that he cannot raise his left arm forward and hold it straight up over his head, and other injuries. His injuries are more or less permanent. Wychgel was forty-three years old and unmarried; he had been a seaman since he was sixteen years of age and his wages were $62.50 per month and board.

Plaintiff alleges in his complaint, in effect, that the hatch board which gave way with him and so precipitated him into the hold, "had been improperly placed over said hatch"; that the defendant was careless and reckless in that it did not provide competent and careful officers in the direction of the work in which plaintiff was engaged, in that they, through their agents, servants and officers of the ship, ordered and permitted plaintiff to go upon said hatch, when a reasonable and careful inspection of the same would have disclosed that they were in an unsafe and dangerous position; in that the officer in charge of the work in which plaintiff was employed failed to inspect the said hatches, in that said officer failed to warn the plaintiff of the dangerous, insecure and unsafe position of said hatch cover and in failing to provide safe and effective ways, rules and machinery for the proper performance of the work in which plaintiff was engaged.

At the time of the trial it appeared that the Columbia Pacific Shipping Company had nothing to do with the case; that it was not the owner of the ship nor the

employer of Wychgel and a nonsuit was granted as to it. At the close of the testimony the States Steamship Company moved for a directed verdict, which was denied. This motion was renewed in the form of a requested instruction, which was also denied. The jury rendered a verdict for plaintiff for $30,000, the full amount prayed for. A motion for a directed verdict, on the same grounds as this appeal, was denied.

The first assignment of error is that the court erred in refusing to grant defendant's motion for a directed verdict; and also erred in refusing to grant defendant's request that the jury be instructed to find their verdict for defendant States Steamship Company. Defendant contends there was no evidence to take the case to the jury.

■ Plaintiff having elected to bring this action under section 33 of the Merchant Marine Act of 1920 and the Federal Employers' Liability Act, his rights and obligations depend upon the principles of law as interpreted and applied in the federal courts: *New Orleans & N. E. R. Co. v. Harris,* 247 U. S. 367 (38 S. Ct. 535, 62 L. Ed. 1167). The Merchant Marine Act of 1920 reads as follows:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall

be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located. (Mar. 4, 1915, c. 153, § 20, 38 Stat. 1185; June 5, 1920, c. 250, § 33, 41 Stat. 1007).''·

The statutes of the United States extending the remedy in cases of personal injury to railway employees referred to in the foregoing statute, and by reference incorporated therein, are known as the Federal Employers' Liability Act and amendments. See 45 U. S. C. A. Railroads, §§ 51-59, inclusive. In so far as material here they read as follows:

''Section 51. Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

 \* \* \* \* \*

''Section 53. In all actions hereafter brought against any common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; Provided, That no such employee who may be injured, * * * shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury * * * of such employee.

''Section 54. In any action brought against any common carrier under or by virtue of any of the provi-

sions of this chapter to recover damages for injury to, * * * any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury * * * of such employee."

Section 56 gives to state courts concurrent jurisdiction with the United States district courts, and provides that no case brought in a state court shall be removed to the federal court.

The evidence indicated that it was .the duty of the officers of the ship, and particularly of the third officer, to inspect and supervise the placing of the hatches; that the hatches, when properly placed, will not fall; that just before the ship was to pull out of Tingsau the plaintiff was ordered by one of the ship's officers to "go to No. 2 hatch and lower that gear down and see that the slings are off the hatches"; that plaintiff went to the hatches as ordered, looked to see if the hatches were in place and could see nothing wrong with them; that at the time there were ropes, tackles and slings lying all over the hatches; that as was necessary in obeying the order of the officer, Wychgel stepped upon the hatch board to clear the hatch of the articles mentioned and that the hatch gave way, and the section of the hatch, together with the plaintiff, fell into the hold· of this ship on the between-deck and he sustained the injuries complained of.

No attempt was made or any evidence introduced by defendant tending to show why the hatch fell, nor did it offer any excuse or show any circumstances which would relieve it or tend in any way to show that due care had been used by the officers of the

ship in inspecting and placing the hatches and in furnishing plaintiff with a reasonably safe place to work.

Plaintiff was rendered unconscious by the fall and did not explain why the hatch fell except that he stated plainly that if the hatch had been properly placed it could not have fallen and that it would have been impossible for the hatch to have fallen if it had been properly placed. He states that on account of the ropes and slings—perhaps it should be called rigging —placed all over hatch No. 2, he could not see whether the hatches were in proper position. One of the officers of the ship seemed to indicate by his testimony that although the hatch was covered over or partially covered over with ropes, slings, etc., the plaintiff could have seen whether the hatch was in proper position by noticing the rise of the rigging, where the hatch would stick up.

The evidence, which is practically uncontradicted, shows the following facts: That the hatches on the steamship California were under the management of defendant or its servants, other than the plaintiff; that the hatches, in the ordinary course of things, do not fall when they have been properly placed; that the plaintiff was ordered to clear the ropes, tackles, pulleys, etc., from the hatches; that in obeying this order it was necessary to step upon the hatch; that before plaintiff stepped on the hatch he looked to see if the hatch was in proper condition, and he could see nothing wrong with it; that he stepped upon the hatch in reaching for the ropes, slings, etc., in order to remove them, as ordered, and the hatch and he both fell down into the hold of the ship.

The plaintiff contends that the facts shown establish beyond a doubt a prima facie case and that there-

upon it was incumbent on defendant to explain why the hatch fell. It is asserted by defendant in its brief as follows:

"Plaintiff cannot recover in the absence of negligence on the part of defendant, and negligence cannot be inferred from the mere happening of the accident —in this case, from the mere falling of the hatch board. And that was the only evidence there was." Citing *Patton . v. Texas & P. R. Co.*, 179 U. S. 658, 663-664 (45 L. Ed. 361, 364); *Toledo, St. L. & W. R. Co. v. Allen*, 276 U. S. 165 (72 L. Ed. 513); *Missouri Pac. R. Co. v. Aeby*, 275 U. S. 426 (72 L. Ed. 351); *Delaware L. & W. R. Co. v. Koske*, 279 U. S. 7 (73 L. Ed. 578).

■ We are governed by the rules obtaining in the federal court. Turning to the opinion in the case of *San Juan Light Co. v. Requena*, 224 U. S. 89, on page 97 (32 S. Ct. 399, 56 L. Ed. 680), where the court treats upon the kind of circumstantial evidence which we have in the case in hand, referring to the doctrine of *res ipsa loquitur*, we find the following language:

"While recognizing that that doctrine is of restricted scope, and when misapplied is calculated to operate prejudicially, we think there was no error in its application in this instance. The deceased was without fault. The defendant's primary wire was carrying a current of high and deadly voltage. Its secondary wire conveyed to his residence an excessive and dangerous current which could only have come from its primary wire. Had its wires and converters been in proper condition, the excessive and dangerous current would not have been communicated to its secondary wire, and the injury would not have occurred."

Applying the principle contained in this statement to the case in hand and taking this opinion as a guide, we may safely say that plaintiff was without fault. The hatches were exclusively under the control of the defendant, and it was charged with the continuing duty of taking reasonable precautions, proportioned

to the danger to be apprehended, to maintain them in proper condition. In the ordinary or usual course of things, when the plaintiff stepped upon the hatch, it would not have fallen and precipitated him into the hold of the ship and the injury would not have occurred, had such duty been performed.

All of the witnesses seem to agree in stating in effect that the ends of the hatches, when placed in proper position, rest upon the supporting flange of the hatch coaming and king beam in the center. Adjacent to the end of the hatches, the part of the flange or iron rises even with the hatch board which is three inches in thickness and about eight feet in length and two feet or more in width. There are twelve hatches in a section, numbered from one to twelve. It would have been impossible for the hatch to have fallen if it had been in proper position. As soon as the hatch fell, it was known by everyone connected therewith that it was not in proper position at the time the accident occurred and that it was an extremely dangerous and unsuitable place for the plaintiff to work when the hatch was not in proper place.

The first question for consideration is, was this circumstantial evidence sufficient to warrant the jury in finding that the hatch was not in a proper position at the time the accident occurred? Second, was it the duty of defendant, acting by its officers and servants, other than plaintiff, to inspect the hatch and to see that it was in proper position so as to make the place where plaintiff was ordered to work a reasonably safe one?

It is not disputed that the hatches were under the exclusive control of defendant. It was the duty of defendant to take reasonable precautions proportionate to the danger to be apprehended, and to keep them in proper condition. As we understand the testimony,

one of the officers was right near the place where plaintiff was at work at that time. It is not to be expected that a seaman in the performance of his duties, as ordered by his superior, would have the time or opportunity of inspecting the hatches as thoroughly as an officer whose duty it was to make such inspection. The jury might reasonably conclude that the officers of defendant were negligent in caring for and inspecting and keeping the hatches in their proper position, or, stated in another way, that the defendant failed in the performance of its duty that it owed to plaintiff as a seaman.

Our statute denominates the kind of evidence to which we have referred, after defining direct evidence, as indirect evidence, or that which tends to establish the fact in dispute by proving another, and which, though true, does not of itself conclusively establish that fact, but which affords an inference of presumption of its existence, or, in other words, as circumstantial evidence: Oregon Code 1930, § 9-109 (Or. L., § 694).

The circumstances, clearly shown by the testimony, might indicate to reasonable men that the defendant was negligent in failing to see that the hatch referred to was in proper condition. We think it was incumbent upon defendant to overcome the prima facie case made or explain the condition of the hatch. Under the facts as disclosed by the testimony, we think it was for the jury to determine whether the injury, which plaintiff suffered, resulted in whole or in part from the negligence of any of the officers, agents or employees of the steamship company, or by reason of the defective condition of the hatch due to defendant's negligence. We are not so much concerned with the

name that should be given to the evidence introduced in the case as with the force and effect thereof. See 5 Wigmore on Evidence (2d Ed.), § 2509.

In the case at hand the officers of defendant would naturally be presumed to know whether the hatches had been inspected and how thorough the inspection had been and what had been found by such an inspection, if any. It was claimed by one of the officers who testified for defendant that the plaintiff should have seen the hatch was out of place, although covered with blocks, slings, etc., "by the way the tackles is lying.". Then by the same rule the third mate or officer, whose duty it was to care for the same, could and should have seen that the hatch was not in position.

The rule, as stated in 2 Cooley on Torts (3d Ed.) p. 1424, is as follows:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by the defendant, that the accident arose from want of care."

A master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place than such as is obvious and necessary. Subject to the limitation that some places of work are inherently more dangerous than others which, as a matter of necessity, cannot be obviated, the master who provides the place owes a positive duty to his employee in respect thereto. Such duty does not go to the extent

of a guaranty of safety but it does require that reasonable precautions be taken to secure safety and it matters not to the employee by whom that safety is secured or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty and if the master sees fit to have it attended to by others, that does not change the measure of his obligation to the employee or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects.

If the act of the third mate or officer in inspecting and looking after the hatches on the steamship California was done in discharge of some positive duty of the master to the seaman, then negligence in the act or want of act is the negligence of the master: *Baltimore & O. R. v. Baugh,* 149 U. S. 368, 386 (13 S. Ct. 914, 37 L. Ed. 772).

The employer is bound to provide a reasonably safe place in which the employee is to work. This is a positive duty resting upon him. It is one which he may not avoid by turning it over to some employee. There is no guaranty by the employer that the place shall be absolutely safe. He is bound to take reasonable care and make a reasonable effort, and the greater the risk which attends the work to be done the more imperative is the obligation resting upon him: *Patton v. Texas & Pac. Ry. Co.,* 179 U. S. 658 (21 S. Ct. 275, 45 L. Ed. 361) ; *Baltimore & Potomac R. Co. v. Mackey,* 157 U. S. 72, 87 (15 S. Ct. 491, 39 L. Ed. 624) ; *Texas & Pac. Ry. Co. v. Archibald,* 170 U. S. 665, 669 (18 S. Ct. 777, 42 L. Ed. 1188) ; *The Thomas Cranage,* 189 Fed. 1003.

In *O'Brien v. Luckenbach S. S. Co.,* 293 Fed. 170, 177, we find the following:

"It is the duty of the employing stevedore, as it is the duty of any employer, to exercse reasonable care

to provide a reasonably safe working place for his employee, and the latter is entitled to act upon the assumption that that duty has been performed unless he knows that it has not been performed or the danger is so patent as to be readily discerned by him. As was said by Judge (now Mr. Justice) Van Devanter in *U. S. Smelting Co. v. Parry,* 166 Fed. 407, 410 (92 C. C. A. 159, 162): 'He (the employee) is not required to make an investigation or inspection to ascertain whether or not that duty has been performed, but only to have due regard for what he actually knows and for what is so patent as to be readily observed by him, by the reasonable use of his senses, having in view his age, intelligence, and experience.' "

The uncontradicted evidence shows that ordinarily, or if the hatch board had been in proper position and the place where plaintiff was ordered to work had been in a reasonably safe condition, the hatch could not possibly have fallen and precipitated plaintiff into the hold. To illustrate, if a man steps into a large covered common steel trap and the trap is sprung, it is evidence that the trap had been set. Of course this would leave the question of whose duty and responsibility it was to care for the trap. There was no error in the court's refusing to direct a verdict for defendant.

Capt. N. H. Anderson, an officer with years of experience and marine superintendent of defendant States Steamship Company, a witness for defendant, speaking about the duty of the mate, said on cross-examination in answer to this uestion:

"Q. In other words, he is charged with the responsibility of sending his men only to places of safety, isn't he, or where there is a safe place to work, isn't he? That is his duty, isn't that right?

"A. That is correct."

■ The second assignment of error is predicated on the court's sustaining plantiff's objection to the question propounded by defendant upon cross-examination of plaintiff, as a witness in his own behalf:

"And if anybody else had examined them (the hatch boards), they would not have seen anything wrong there?"

Wychgel, as a witness in his own behalf, had thoroughly explained the condition of the hatch, stating that it was covered over with ropes and slings, etc., so that he could not see that the hatch was out of place. He explained that he was reaching for the tackle—or whatever it should be called—and did not have time to make a long examination. He was subjected to cross-examination occupying fifty-six pages of the typewritten transcript of testimony. The question verges upon an argument and tends to call for a conclusion of the witness which the jury should consider. We do not think that there was any error in the ruling of the court upon this question. The question seems to assume that the defendant, by its third mate, examined the hatches. The testimony adduced does not tend to show this. It is questionable if the hasty glance the plaintiff gave the hatches as he began to clear them should have been compared with the inspection that the officer in charge of these hatches should have made in the exercise of reasonable care.

■ Defendant predicates error of the court in permitting counsel for plaintiff to refer to two photographs offered in evidence. These photographs were not of the ship California but were photographs of parts of the "Kentucky", a sister ship. It was not claimed that the conditions, prevailing at the time these photographs were taken of this other ship, were similar to those on the steamship California. One is that of

a hatch with a hatch board out of place, indicating very plainly that anyone could see the same in daylight, which would be exceedingly misleading to the jury. There are no ropes or rigging over the hatches as the testimony tended to show were scattered over the hatch boards, preventing plaintiff from clearly seeing the hatch board, which caused plaintiff to fall. The other photograph shows lumber piled near the hatchways and a tarpaulin near the hatches, and admittedly the conditions were different than obtained over the hatchway of the California at the time of the injury. The photographs were properly ruled out. One photograph showing the construction of a section of the hatch boards on the ship "Kentucky" was introduced for the purpose of illustration only, with the explicit understanding that it did not represent the conditions prevailing on the steamship California at the time of the injury. In our opinion this was sufficient, and there was no error in rejecting the other two photographs. Counsel, in urging his objections to the photographs, referred to them as "trick photography." The case was tried in a very orderly · manner and there was no language likely to excite the passions of the jury and whether the language was stronger than the circumstances justified or not, a question that is perhaps debatable, we do not think that it borders on such misconduct as would warrant a reversal.

 Defendant assigns error of the court in refusing to give defendant's requested instruction as follows:

"I instruct you that if you shall find from the evidence that plaintiff was injured in consequence of a risk which he assumed, he cannot recover; that an experienced employee, as a matter of law, assumes all risks

that are incidental to the work in which he voluntarily engages, including the risk of being injured because of latent defects in the apparatus or appliances customarily used in the service; that a latent defect is a concealed or hidden defect or imperfection not discernible by reasonable examination such as the nature of the business reasonably permits."

This charge is apparently asked upon the theory that the accident causing the injury complained of was due to a latent defect or imperfection not discernible by reasonable examination. The cause was tried in the circuit court upon the theory that the hatch board was not a defective appliance. The theory of the case adopted by defendant at the trial should be adhered to. A misplacement of the hatch differs from a latent defect in an iron or steel tool which cannot be discovered. The trouble here complained of is that the misplaced hatch was strewn with numerous bulky articles which prevented the defendant, in obeying the order of his superior, from observing the misplacement of the hatch. The duty of keeping the hatch properly placed was a duty imposed on the defendant steamship company. It was a continuing duty that could not be delegated to any other person. We find no evidence that any latent defect existed. The instruction requested was not appropriate. If there had been any latent defect in the hatch board so as to cause the same to break, the plaintiff having been rendered unconscious and put in an oriental hospital immediately after the accident, while defendant was in possession of the ship and the hatch, it would have been an easy matter for defendant to have shown any latent defect in the hatch board, if there had been one. No such evidence was introduced. There was no error in such refusal of the court.

At the request of defendant the court charged the jury as follows:

"I instruct you that if you shall find from the evidence that a reasonable and careful inspection of the hatch boards would not have disclosed the possibility of its falling when plaintiff stepped on it, you must find your verdict for the defendant States Steamship Company.

"If you should find from the evidence that the hatch board was improperly placed and that such improper placing was open, obvious and apparent, I instruct you that the plaintiff assumed the risk of injury by steping on said hatch board, and your verdict should be for the defendant States Steamship Company.

This instruction, in view of the fact that the evidence did not disclose that any inspection of the hatch board was made by the defendant, was fair to the defendant.

 The seventh and eighth assignments of error are similar. Defendant complains of the giving of the following instructions:

"I instruct you that the seamen are bound to use the equipment and appliances which the owners furnish and the owners, on their part, are bound to furnish and maintain equipment and appliances for the seamen to use, at least free from defects known, or which ought to be known. The common law rules do not apply to this relation of master and seaman. It is intimate and peculiar, and differs from that between shore master and servants, who may at any time withdraw from service and refuse to use tools and appliances which they think dangerous. Employers of seamen may not be insurers, but a much higher degree of care must be required of them than is required of employers of shore servants.

"I instruct you that if a servant—and this includes a seaman—acts in obedience to an order of his employer, or any officer in command on said boat, and if

he obeys the order and is injured, the employer will not be permitted to defend himself on the ground that the employee ought not to have obeyed the order."

Defendant complains that:

"The trial judge in this case lifted bodily the language out of an opinion in a case under the old rules and gave it as an instruction to the jury in this case. The opinion is from *Storgard v. France, Etc., Corp.,* 263 Fed. 545, 547."

The Storgard case appears to have been followed and approved in 1929 in the case of *Masjulis v. U. S. Shipping Board,* 31 Fed. (2d) 284, as shown by the use of the following language:

"Since the plaintiff was using the rope under orders, it was error to submit the question of assumption of risk to the jury: *Cricket Steamship Co. v. Parry,* (C. C. A.) 263 Fed 523; *Panama R. R. Co. v. Johnson,* (C. C. A.) 289 Fed 964.

"As was pointed out in the Johnson case, supra, there is such an obligation upon a seaman to obey the orders of his superiors that he cannot have the freedom of action which lies at the base of the doctrine of assumption of risk as applied to workmen on land. On this subject the following language is quoted from the opinion in *Storgard v. France & Canada Steamship Corp.,* (C. C. A.) 263 Fed. 545: 'The common-law rules do not apply to this relation of master and seaman. It is intimate and peculiar, and differs from that between shore master and servants, who may at any time withdraw from service and refuse to use tools and appliances which they think dangerous.' "

Taking the whole of the charge of the court and not singling out certain phrases or paragraphs thereof, we think the case was fairly submitted in accordance with the rules of law which we have taken, as shown in our statement from the opinions of the United States Supreme Court, where we not only found the

law but also much of the language which we have employed. While the language of the instruction to the jury may not be perfect, it seems it conveyed to the jury the idea that under the maritime law it was the duty of the owners to furnish and maintain equipment and appliances for the seamen to use at least free from a defect known or which ought to have been known. In effect the trial court informed the jury that the care which a sea employer owed to his employees should be commensurate with the attending dangers. See *Delaware L. & R. W. Co. v. Koske,* 279 U. S. 7 (49 S. Ct. 202, 73 L. Ed. 578).

The rule under the Federal Employers' Liability Act is, quoting from *Patton v. Texas Pac. Ry. Co.,* 179 U. S. 658 at page 664 (21 S. Ct. 275, 45 L. Ed. 361), referred to by defendant:

"That while the employer is bound to provide a safe place and safe machinery in which and with which the employee is to work, and while this is a positive duty resting upon him, and one which he may not avoid by turning it over to some employee, it is also true that there is no guaranty by the employer that place and machinery shall be absolutely safe."

Defendant contends that the question of plaintiff's assuming the risk should have been submitted to the jury by an additional instruction requested by defendant. In answer we refer to the case of *Gila Valley Ry. Co. v. Hall,* 232 U. S. 94 (34 S. Ct. 229, 58 L. Ed. 521), where we find recorded the following language:

"But the employee has a right to assume that his employer has exercised proper care with respect to providing a safe place of work, and suitable and safe appliances for the work, and is not to be treated as assuming the risk arising from a defect that is attributable to the employer's negligence, until the employee becomes aware of such defect, or unless it is so plainly

observable that he may be presumed to have known of it. Moreover, in order to charge an employee with the assumption of a risk attributable to a defect due to the employer's negligence, it must appear not only that he knew (or is presumed to have known) of the defect, but that he knew it endangered his safety.''

The testimony in the present case does not indicate in any way that Wychgel knew or should have known of the danger attributable to ·defendant's negligence in failing to inspect and put in place the hatch board which precipitated him into the hold of the ship. There was no evidence that the danger was open or obvious or apparent or imminent, in so far as plaintiff could observe.

In the case of *Engfors v. Nelson Steamship Co.,* 131 Or. 108 (280 P. 337), under the Federal Employers' Liability Act, Mr. Chief Justice CosHow writing the opinion, we find:

''Under the Federal Employers' Liability Act when the injury is caused by the failure of the master to provide a safe place to work or safe appliances, the defense of assumption of risk can not be made.''

The defendant assigns as error and strongly urges that the verdict is excessive and there is no evidence to support the amount of it; that the court must decide this question under the federal rule of burden of proof, and that even under the Oregon rule, section 3-c, article VII, of the Constitution of Oregon, which provides, *inter alia,* ''that no fact tried by a jury shall be otherwise reexamined in any court of this state unless the court can affirmatively say there is no evidence to support the verdict.''

■ It would not be of any avail to the parties to this case, or to anyone, for us to discuss the testimony at length. Conceding plaintiff's contention that the use

of his left arm is permanently impaired; that he is unable to pursue his usual vocation as a seaman; that it may be difficult, if not impossible for him to obtain other employment at his age; the amount of wages he received and all the facts and circumstances of the case, we do not think that the evidence in the case supports the verdict over and above the sum of $15,000, and that that amount will be fair compensatory damages which the plaintiff has sustained. See *Martin v. Oregon Stages,* 129 Or. 435 (277 P. 291).

The judgment will, therefore, be modified and affirmed in the sum of $15,000. Plaintiff will recover his costs and disbursements in this court and in the circuit court.

ROSSMAN and CAMPBELL, JJ., did not sit in this case.

---

RAND, J., dissenting.

I regret that I am unable to concur with the majority opinion in this case in holding that there was a legal liability upon the part of the defendant company for the injuries sustained by plaintiff. On the trial the answer was amended so as to allege plaintiff's assumption of the risk and also contributory negligence upon his part. As I read plaintiff's own testimony, I think, as a matter of law, he both assumed the risk and was also guilty of contributory negligence. If the first assumption is correct, then there was no legal liability upon the part of the defendant company. If I am in error in that respect, then there is no allowance made for plaintiff's contributory negligence but the entire damage was assessed against the defendant company.

According to plaintiff's own testimony, he was an able-bodied seaman, forty-three years of age and had

been engaged as a seaman since he was sixteen years of age and was thoroughly familiar with all the duties, risks and dangers of a seaman. He had been at one time a boatswain on another ship. He testified that the accident occurred about 2:30 o'clock in the afternoon; that just before its occurrence, he had been down below,

"and the mate called 'All hands', and I had come on deck, and the mate told me to see that the gear is up, and to clear the hatches of the lines and slings. * * * Q. What time were you called to duty that time? A. I was called on duty at half past two. The mate come forward and the bos'n come forward with one man, and he said, 'Turn to and batten down the hatches, and get the gear cleared'; * * * I went aft, dressed myself and I went up on deck. He said we must get on deck,—the mate said, 'Now, you go on up to number 2,' and I seen that he got through with number 1, 'And have the booms ready to lower down, and see that all them slings and gear is off them hatches.' * * * Before I came to number 2, the mate said to me, 'You go up on number 2',—he was on number 3 hatch, and he says, 'you go up on number 2 hatch and lower that gear down and see that the slings is off the hatches, and that we have everything ready to put out; we want to put out.' Q. When you came up to this number 2 hold, just tell the jury what the condition those hatch coverings were in. What was on them? A. When I come on to number 2 hold, the hatches was all covered, everyone of them, and there was all kinds of ropes and slings on it; and when I cleared the hatch, and when I looked all over the hatches, I couldn't see anything wrong with them. If I see there was anything wrong with them, I certainly would not have stepped back on it. I have been to sea too long, so I know a lot about hatches, if it was right or wrong."

He testified that the hatch covers were about 2½ feet wide, 6 or 8 feet long and 3 inches thick; that

one of these hatch covers was only partially in place and when he stepped on the end of it, it tipped and precipitated him to the deck below, a distance of eight or ten feet, causing the injuries complained of. He was then asked:

"Q. Who was it that put these hatches around over these two holds, do you know?

"A. The stevedores put the hatches over the holds; they put them over the holds, but the third mate is supposed to be in charge of that, to do that, and see it is done."

At the time of the injury the ship was tied to the dock in the harbor of Tingsau, Manchuria. He then testified:

"The hatch wasn't in the proper place at all—The hatch was put on right and everything; that hatch was put on right. There is nothing wrong with it that I couldn't see. If I saw it was not in the proper place, I certainly would not step on it. The hatches was put on right, and I couldn't see nothing on top. All I could see was ropes and tackles on there, and I stepped on this hatch first, and I was helping with some tackles, and then I wanted to get—I stepped on this side, and I fell right down. This hatch was on the starboard side, and I walked before from this hatch here (indicating) to this one, and I walked up that way again to get some slings, and I went over to that hatch there (indicating), and I started to walk this way and there was some slings I had to get, and I went right down. I couldn't see nothing wrong with the hatches. I looked at the hatches before I went on the hatch, every time I step on a board. If I see a hatch wasn't on right, I certainly would not step on it. When I go on board ship, if I work there, I look at the hatch first, if they are put on right. I couldn't see nothing wrong with it, on account there was lots of ropes and tackles laying on there. I stepped on this hatch and I was going to get the rest, and I couldn't see nothing wrong with

the hatches; if I see anything wrong, I certainly would not step on there; nobody wants to fall down if they can help it."

Under this testimony, an able-bodied seaman, thoroughly acquainted with the dangers incident to the work, had been directed to close the hatches and batten them down. While performing this order, if the hatch coverings were not all in place, it was his duty, after clearing them of the ropes and slings on them, to place the covers in place and then to place over the hatches the tarpaulins to make them water-tight. While doing this work, he was making a dangerous place safe and the danger incident to the work was as open and visible to him as it would have been to the master of the vessel or any of its officers if they had been there at the time. In the loading and unloading of cargoes, it is, of course, necessary to remove the hatch coverings so that the cargo can be raised or lowered into the hold and if the stevedores, who do the work, leave the hatches open, or the covers not all in place, then a seaman is directed to close the hatches and batten them down. He is engaged in making a dangerous place safe and the rule applicable to the facts testified to by plaintiff is that stated in Bailey on Personal Injuries (2d Ed.) § 69, as follows:

"It is the duty of the master, which he cannot delegate so as to escape liability, to use reasonable or ordinary care to provide a reasonably safe place for his servants to work in, except that such rule does not apply (a) where the work the servant is employed to do consists in making a dangerous place safe, or (b) where the character of the place for safety is constantly changing as the work progresses as a direct result of the servant's labor, or (c) where the work itself makes the place insecure or dangerous, or (d) where the place is made unsafe by the carelessness and

negligence of fellow-servants (this last exception is, of course, eliminated in cases of this character by the federal statute), or (e) where the place is made unsafe by a stranger and sufficient time has not elapsed to charge the master with knowledge thereof.''

The court instructed the jury, in effect, that it was the duty of the defendant company to provide a reasonably safe place for plaintiff to work when he was doing the work of closing the hatches and battening them down. The court also denied a motion for a directed verdict. In my judgment the court erred. Therefore, I think the case should be reversed.

I concur, however, in the holding that if there was legal liability then the evidence did not support a verdict for the amount rendered and that, therefore, it is proper for the court to reduce the amount of the judgment to an amount commensurate with the injury sustained as shown by the testimony.