### THE ESTRELLA.

### GRECO v. DET BERGENSKE DAMPSKIBS-SELSKAB.

### DIMATTEO v. SAME.

#### Nos. 13138, 13157.

District Court, E. D. New York.

Jan. 23, 1933.

Irving Spieler, of New York City (John S. Leonard, of New York City, of counsel), for libelant Salvatore Greco.

Paul Koch, of New York City (David Glucksman, of New York City, of counsel), for libelant Joseph Dimatteo.

Hatch & Wolfe, of New York City (Carver W. Wolfe, of New York City, of counsel), for claimant.

BYERS, District Judge.

These causes were consolidated for the purpose of trial, and involve the personal injuries suffered by the respective libelants on February 5, 1932.

They were stevedores employed by Brady & Gioe, Inc., and had been for many years. At about 9:00 o'clock on that morning, they formed part of a group of about thirty men standing on the Faber Line pier at the foot of 31st Street, Brooklyn, waiting for the Norwegian Motorship Estrella to dock on the south side, bow in.

The men crowded out on the string-piece as the docking was being accomplished; the ship was breasted off a matter of about 3 or 4 feet, and, after bow and stern lines had been hauled taut, but not made fast, the foreman of the gang called to the ship's first officer, to lower the accommodation ladder, which was in position for this purpose, about 130 feet aft of the bow, on the port side.

The mate left his position, upon receiving the request, went aft to the ladder, and lowered it into position for use in boarding the vessel, made it fast even with the pier, and then went forward to resume his duties on the bow. At this time, the Master was in his cabin, writing.

The accommodation ladder was about 30 feet long, and two feet wide, and contained 32 or 33 steps. It was in two sections, the lower having 10 steps. The two sections were bolted together. The lower section terminated in a platform about 2½ feet square.

Outboard there was a hand-rail of rope, carried by metal posts.

The ladder was of teak, substantially constructed, and apparently in good condition; its age was not disclosed, but it had been in constant use for over three years. Some time prior, at an undisclosed date and while it was being carried lashed to the side of the ship at sea, the force of a high wave broke it, and the damaged part was cut away, and the remainder kept in use, without incident until the day in question.

When the ladder had been put into position as stated, the foreman stevedore told his men to board the ship to commence discharge of the cargo. A number, roughly ten, did this, and a steady stream of companions followed them, including Rizzota, Greco and Dimatteo. As the former was at about the second step from the top, he heard the ladder break, but

was able to clamber safely on board. The other two men fell a distance of from 12 to 15 feet, into the water, first striking either the string-piece, or the floating timbers which fended the vessel off, and recovery is herein sought for the injuries thus sustained. What happened to the other men who were on the ladder at the time, has not been disclosed.

It is found that the first officer knew that the accommodation ladder had a carrying capacity of three or four men at a time, at the angle of its then position; that he knew that the ladder had been called for from the dock for the purpose of affording access to the ship by those on the dock; that he saw a number of people on the dock and the string-piece near the platform at the foot of the ladder when it was made fast as stated.

That the first officer did not warn persons in a position to board the vessel, that the ladder could safely sustain only three or four persons at a time, nor did he post a deckhand on the platform for that purpose, nor did he do anything to prevent overcrowding of the ladder.

That he knew it was customary to stop as many as eight or ten men if they sought to use the ladder at the same time; that he knew it was customary for stevedores to come aboard as soon as the ship was moored, and that sometimes they used the accommodation ladder, and sometimes a gangway.

These findings lead to the conclusion that there was neglect upon the part of those in control of the ship, to furnish a safe place, i. e., a safe access to the place in which the stevedores were to work, in that they were invited to board the ship by means of an accommodation ladder which was known to be safe for use by not more than four men at a time, and no precaution was taken to restrict the use thereof to that number of men. In principle, this case is thought to fall within those holding a ship responsible for the failure to warn stevedores against a latent defect in that which constituted the place where they had to work; this ladder was not defective if used by the number of persons it was capable of accommodating, but it was known to have a limited capacity. The failure to restrict its use to its safe capacity, was a breach of duty towards those who were ignorant of the true facts. See The Rheola (C. C.) 19 F. 926; Leyland & Co. v. Holmes (C. C. A.) 153 F. 557; The Chicago (D. C.) 156 F. 374; Hyades (Petersen v. Klitgaard) 212 Cal. 516, 299 P. 54, 1931 A. M. C. 1027, at page 1033.

With respect to the injuries suffered by Dimatteo, it is found that there is no apparent

permanent impairment. Loss of earnings during the time of his disability, with reasonable compensation for pain and suffering, seem to justify an award of $2,500.00.

As to Greco, the sacro-iliac sprain seems to have been established. That this may deprive him of a livelihood, however, does not follow, because it is not necessarily permanent, nor was he accustomed to doing heavy lifting when following his usual occupation. The award in his case will be $2,000.00.

Settle decree on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.