## OSTERHOUDT v. FEDERAL SUGAR REFINING CO.

### THE UNIVERSE.

(District Court, S. D. New York. May 17, 1926.)

**1. Collision ⬤⟳74.**

That lines of barge next to dock parted before slipping of line to dock from barge outside of and lashed to first barge *held* plainly to be inferred from circumstances in evidence in collision case.

**2. Evidence ⬤⟳75.**

From failure to produce on trial in collision case lines of barge to dock which parted under strain of pressure of ice and tide, *held*, that their defective condition may properly be inferred.

**3. Collision ⬤⟳71(3).**

Defective condition and consequent parting of lines of barge next to dock *held* proximate cause of collision of her and barge lashed to her side with third barge.

**4. Collision ⬤⟳71(3).**

That line to dock from barge fastened to side of barge next to dock slipped, when lines to dock of inside barge broke under strain of tide and ice, causing collision with third barge, *held* not sufficient to charge her with fault.

In Admiralty. Libel by Alexander S. Osterhoudt for collision damages suffered by the barge Universe, in personam against Federal Sugar Refining Company, and in rem against the barges Queen Anne, Francis Scully, Josephine, and Mary F. Scully. Decree in accordance with opinion.

The collision occurred at the sugar docks of the Federal Sugar Refining Company, at Yonkers, N. Y., January 18, 1923. In the early morning of that day the Universe was lying at the south side of the coal pier, with her port side to the pier and her bow in shore. This pier extends into the river beyond the line of the raw sugar dock, which is a continuous bulkhead running parallel

to the stream north and south, immediately south of the coal pier.

The four barges, Mary F. Scully, Josephine, Queen Anne, and Francis Scully, were lying in pairs at this bulkhead, directly to the south of the Universe—the first pair being the Josephine, with her port side to the dock and her bow downstream, and Mary F. Scully, moored outside and alongside of the Josephine, also with her bow downstream; the second pair being the Francis Scully, with her starboard side to the dock, about 25 feet to the south of the Josephine, and her bow upstream, and the Queen Anne, moored outside and alongside of the Francis Scully, with her bow downstream. The Queen Anne was made fast to the Francis Scully by means of a 3-inch line running from her second forward cleat to the stern of the Francis Scully, where it was doubled and carried to her own forward cleat, and by a 4-inch stern line doubled up several times. She also had a new 5-inch line running from her middle bitt to the dock, where it was securely fastened at a point downstream from the stern of the Francis Scully.

Until shortly before the accident the ice had been solid along the docks, which extended about 200 feet out into the Hudson river; but shortly before the accident the ice to the north and south of the barges was broken by the operation of a tug. The tide, which was flood, moving upstream against the ice, caused the lines of the Francis Scully to part, with the result that this barge and the Queen Anne were carried into collision with the Mary F. Scully and the Josephine, whose lines in turn parted. In the resulting mêlée the collision with the Universe occurred.

The libel was dismissed as against the Mary F. Scully and the Josephine upon the trial. In behalf of the Francis Scully it is claimed that her lines did not part until after the 5½-inch line from the bow of the Queen Anne to the dock had loosened or slipped on the bitt, thus throwing a great strain upon the lines of the Francis Scully, to which the Queen Anne was made fast. In behalf of the Queen Anne it is contended that its line to the dock did not slip until after the lines of the Francis Scully, which it is claimed were old and worn, had broken, and that therefore the accident was due, not to the failure of the Queen Anne's line to hold, but to the insufficiency of the lines used by the Francis Scully.

The libelant charges the Federal Sugar Refining Company with fault in placing the barges and in failing to see that they were safely moored, so as not to cause injury to other vessels at its dock, including the Universe.

William F. Purdy, of New York City, for libelant.

Park, Mattison & Lynch, of New York City (Anthony V. Lynch, Jr., and Frank P. Treanor, Jr., both of New York City, of counsel), for respondent Federal Sugar Refining Co.

Thomas E. Murray, Jr., of New York City, for claimant Neville.

Macklin, Brown & Van Wyck, of New York City (Paul Speer, of New York City, of counsel), for claimant O'Boyle.

THACHER, District Judge (after stating the facts as above). No one saw the sequence in which the Queen Anne's line to the dock slipped around the bitt and the lines of the Francis Scully parted. Plested, the captain of the Francis Scully, testified that he was awakened by the operations of the tug, got up, and started his fire. He continued his testimony as follows:

"Q. Captain, after you dressed, forgetting all about this towboat, tell me when you saw the first indication of the boats breaking away and how it happened. A. I happened to glance over towards the dock, and I saw the boats starting to move. I opened my door, and just as I did my line was creaking. When I got outside of the door, the line from the middle cleat from the Queen Anne, that was fast to the eye on the dock, was in the ice. After that I went around to the starboard side of my boat to render my lines, to ease the surge on my lines, so that they would not carry away. But I could not get there fast enough. The line was gone."

Both he and the captain of the Universe agree that the Queen Anne's line to the dock did not part, but that it slipped on the bitt aboard the Queen Anne, dropping down upon the ice.

[1-4] Capt. Plested's statement, that his boat was already in motion before he left his cabin, satisfies me that his lines had already parted then. But still there is no direct testimony to show whether they parted before or after the line from the Queen Anne slipped on her bitt. It is, however, to be plainly inferred from the circumstances that the lines of the Francis Scully must have parted first. So long as the lines of the Francis Scully held, she could not move appreciably, and if she did not move, except

as her lines permitted, there was nothing to cause the line to the Queen Anne to slip off the bitt and fall on the ice. Furthermore, I am satisfied from the evidence that the lines of the Francis Scully were old and worn, and not adequate to withstand the strain resulting from conditions which were obvious. After the accident these lines were sent to a junk shop. There was no effort to produce them on the trial, and the inference may therefore be properly drawn that, if they had been produced, their defective condition would have been disclosed.

I am therefore constrained to find the Francis Scully at fault, and that the proximate cause of collision was the defective condition and consequent parting of her lines. No one can say that the single line from the Queen Anne to the dock alone would have held the two barges, if it had not rendered under the strain put upon it after the Francis Scully had parted all her lines. In any event, the fact that it was not so securely fastened as not to slip under the added and extraordinary strain is not sufficient to charge the Queen Anne with fault. There is nothing to show, aside from the mere fact that it did slip under a strain which it was not intended to withstand, that it was not properly fastened. Certainly there was no duty upon the outside barge to be so securely moored to the shore as to save the inside barge after all of her lines had parted.

The Francis Scully was owned, controlled, and operated by the respondent Federal Sugar Refining Company. As owner of this barge, its liability for the damage resulting from the neglect of its servants charged with the responsibility of seeing that she was properly moored is clear, and it becomes unnecessary to consider the additional ground for liability alleged by reason of the control exercised by it over vessels lying at its dock.