THE JOHN AND FREDERICK.

BOUCHARD TRANSP. CO. v. DIAMOND P. TRANSP. CO.

THE CLARE.

THE SAMSON.

A. H. BULL S. S. CO. v. BOUCHARD TRANSP. CO. et al.

Nos. 13810, 13627.

District Court E. D. New York.

March 11, 1935.

On Reargument April 25, 1935.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Gerald J. McKernan, both of New York City, of counsel), for libelant Bouchard Transp. Co.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Edwin S. Murphy, of New York City, of counsel), for libelant A. H. Bull S. S. Co.

Bigham, Englar, Jones & Houston, of New York City, and Conlen, La Brum & Beechwood, of Philadelphia, Pa. (James W. Ryan, of New York City, and J. Harry La Brum and Richard R. Bongartz, both of Philadelphia, of counsel), for the Samson.

MOSCOWITZ, District Judge.

The Diesel tug Samson, owned by the Diamond P. Transportation Company, had in tow the oil tanker John and Frederick, owned by the Bouchard Transportation Company. The John and Frederick was approximately 300 feet long, 35 feet wide, and 18 feet deep, drawing approximately 14 feet of water, and loaded with a cargo of 270,000 gallons of creosote oil. The tow and tugboat put into Hampton Roads on October 2, 1932, and departed therefrom on October 3, 1932, at about 7 a. m., bound for Charleston, S. C.

On October 4th, the wind and sea commenced to and continued to increase, so that by night a hard gale was blowing and quite heavy seas were being built up. During this period of time, it became necessary to have two men on the wheel instead of the customary one. This condition increased on October 5th, when the barge John and Frederick was shipping water. It grew worse and the single wire cable which was made fast to the manila hawser parted about 12:45 a. m. on October 6th. The tug Samson abandoned the John and Frederick.

After the John and Frederick went adrift, soundings were taken by an 18-fathom lead line about every hour. No bottom was reached and her master, believing it to be the safest course, permitted her to drift into deep water. At no time did the John and Frederick leak, although she was in heavy seas.

On October 6th the steamship Clare, owned by the A. H. Bull Steamship Company, picked up the John and Frederick, which had been adrift approximately 18 hours, and towed her to Charleston, S. C.

A chain bridle was fastened to the bow bitts of the John and Frederick, coming through her chocks. This bridle was then fastened to a single wire cable 1⅛ inches, and then by means of a shackle, the other end of the cable was fastened to a manila hawser, which hawser was made fast on the tug. The wire cable which parted was part of the tug's equipment. Part of the cable was pulled in on the barge, the manila hawser and the remaining part of the cable being towed through the sea by the tug Samson. The tug Samson put into port and communicated with its owners, who advised that the John and Frederick had been picked up and was being towed to Charleston. The tug then joined her.

After the John and Frederick was made fast alongside the dock, a deck hand from the tug Samson came aboard and took from the barge that part of the wire cable which remained fast to the John and Frederick.

The Samson has failed to produce this cable. Apparently this wire cable, which would have shown its condition, was taken out to sea by the Samson and after a conversation between her mate and captain the hawser was thrown into the sea. The reason for this is obvious. The cable was old and defective; if not, it would not have broken. This is borne out by the testimony of Captain John Thomas Pateman, who was called as an expert on behalf of the Diamond P. Transportation Company.

■ The failure to preserve the broken hawser justifies the inference that, if produced, it would show that it was unfit for towing purposes. Clyde·Lighterage Co. v. Pennsylvania R. Co. (C. C. A.) 258 F. 116; The Bertha F. Walker (C. C. A.) 220 F. 667; The Bolton Castle (C. C. A.) 250 F. 403; The Colon (C. C. A.) 249 F. 460; Osterhoudt v. Federal Sugar Ref. Co. (The Barge Universe) (D. C.) 14 F.(2d) 319, 1926 A. M. C. 1014.

■ The accident was caused solely through the fault of the tug Samson in proceeding in bad weather with a hawser unfit for towing purposes, and without any fault on the part of the John and Frederick.

The steamship Clare rendered salvage services and is entitled to be compensated for its services in the sum of $400.

Settle findings and decree on notice in accordance with this opinion.

### Supplemental Opinion on Reargument.

An opinion was filed on March 11, 1935, granting a decree against the tug Samson and awarding the steamship Clare salvage service. The court has granted a reargument. No good reason is urged why the decision as made should not stand as against the Samson.

■ The claim is made that the John and Frederick should have anchored. This was what the captain of the John and Frederick attempted to do, as he had been taking soundings with an 18-fathom lead line about every hour and could not reach bottom. The barge sustained slight heavy weather damage. Even if it were possible for her to anchor, which fact I do not find, she would have sustained the same damage. The complaint is made that the barge should not have jettisoned her cargo. It must be remembered that the captain of the barge was not a licensed mariner, that his barge was in a storm on the open Atlantic, and that he used his best judgment.

I cannot say upon this record that his judgment was poor under all these circumstances.

■ The question of salvage award presents a different question. A stipulation for value, covering the barge John and Frederick, her cargo and pending freight, has been filed by the Bouchard Transportation Company, Inc., pursuant to an order of this court, fixing the amount of the stipulation for value in the sum of $15,000.

The steamship Clare is a single screw steam freight vessel of 3,372 tons gross and 2,139 tons net register with a deadweight capacity of 5,146 tons. She is classed 1100A1 by Lloyd's Register of Shipping, and was built in 1915. Her length is 327.2 feet; beam, 46.2 feet; and her depth, 22.9 feet. She has triple expansion three cylinder engines and is fitted for oil fuel. She is registered at the Port of New York and flies the United States flag. At the time of the salvage service she carried a total crew of thirty, including the master and seven officers. The value of the steamship Clare was $150,000.

The John and Frederick is a tank barge without motive power. Her exact dimensions are not shown. The answers to the interrogatories filed by the claimant of the barge stated that her length was 180 feet; breadth, 31 feet, 2 inches; depth, 16 feet, 1 inch. Her master testified that she was 200 feet long, that her beam was about 35 feet, and her depth about 18 feet. At the time the steamship Clare approached the barge her freeboard was from 18 inches to 3 feet. She contained eight cargo tanks. She had a radio receiving set but no wireless equipment or any means of sending messages.

At the time of the salvage service, the barge had on board 216,807 gallons of creosote oil remaining after a jettison of about 75,000 gallons at one a. m. on October 6, 1932. Her crew consisted of four men and the captain's wife. At the time of the salvage service her value was $45,000. The value of her cargo was $23,250. Her gross freight earned on the voyage was $2,736.30. The total salved value was $70,986.30.

On October 6, 1932, at 6:20 p. m. the steamship Clare, which was southbound between Cape Lookout Light Vessel and Frying Pan Shoals Light Vessel on a passage from Baltimore to Jacksonville, received an S. O. S. by blinker from the barge John and Frederick which was adrift. At that

time the steamship Clare was at latitude 33.49 N; longitude 77.18 W. The compass course of the steamship Clare at the time was southwest by west and the blinker was sighted off the starboard quarter of the vessel. The steamship Clare immediately headed for the signal and came up with the barge at about 6:30 p. m. It was then dark and there were fresh to strong north-northwest winds. The sea was rough. The master of the steamship Clare hailed the barge by megaphone about 300 feet away and asked the master of the barge what was wrong. The master of the barge said that he wanted to be towed to a safe port. The master then lowered the vessel's work boat in charge of the chief officer with two sailors. This boat was about 25 feet long. In order to lower the work boat, the steamship Clare had to swing around in order to make a lee for it, because the sea was rough. Buckets had to be used in the boat to bail out water which was coming aboard. The wind was about north-northwest, at about force 5. When the work boat got near the barge, the barge's captain passed a three-inch messenger line to the work boat. The work boat then returned to the steamship Clare with the messenger line which, after some difficulty, was passed to the steamship Clare. The steamship Clare had considerable difficulty in taking the work boat back on board, and the seamen on the work boat were in considerable danger. The towing gear consisted of two 60-fathom seven-inch manila mooring lines fastened end to end. The work of rigging the towing gear and getting the work boat back on board took until about 10 p. m. The steamship Clare with the barge in tow arrived off Charleston Light Vessel at about 8:56 p. m. on October 7, 1932. The steamship Clare resumed her voyage at 9:59 p. m. on October 7, 1932, and proceeded to Jacksonville, arriving at her destination on October 8, 1932, at 3:02 p. m. Had she proceeded on her regular course without the barge in tow, she would have arrived at Jacksonville on October 7th at about 9 p. m.

The services performed by the steamship Clare were of a high order of merit. The steamship Clare is allowed its actual expenses for loss of time, $375, and damage to the towing hawser, $75. She is awarded salvage in the sum of $3,500, one-third thereof to be shared by her master, officers, and crew.

Settle findings and decree on notice.