### MALDONADO v. LYKES BROS. S. S. CO., Inc.

### No. 11035.

Court of Civil Appeals of Texas. Galveston.

May 30, 1940.

Rehearing Denied July 25, 1940.

Armstrong, Cranford, Barker & Bedford, of Galveston, for appellant.

Royston & Rayzor, of Galveston (M. L. Cook, of Galveston, of counsel), for appellee.

GRAVES, Justice.

This appeal is from a judgment of the 56th District Court of Galveston County sustaining a general demurrer to the petition of appellant, and dismissing his suit for damages for personal injuries, as therein declared upon by him against the appellee; the material substance of the pleading was this:

"2. That on or about the 3rd day of September, 1939, plaintiff was employed as a seaman in the capacity of a messboy on board the Steamship 'Cardonia', which was a vessel registered under the laws of the United States, and which vessel was owned and operated by the defendant under the control and direction of superior officers employed by the defendant; that between four and five P. M. on the date aforesaid, while said vessel was being docked in the Port of Houston, Texas, plaintiff received and suffered serious and permanent bodily injuries, and sustained damages as the proximate result of the negligent acts and omissions of the defendant, its officers and agents, as hereinafter more fully described.

"3. That at the time and on the occasion described aforesaid, the plaintiff, while on duty and in the act of the performance of his duties as a messboy in the saloon of said vessel, was slicing and cutting bread with a large and heavy butcher-knife, weighing approximately twenty-one ounces, and being fifteen to eighteen inches in length, which he had been ordered to use for such purpose by an agent of the defendant, to-wit, the steward on said vessel; that said butcher-knife was designed and customarily used and employed by the defendant, its agents and employees, in cutting meats, including meats containing bones, and was an improper tool for use in cutting bread; that at the time and on the occasion described above, the bread-knife with which said saloon was furnished had become misplaced and lost, and without supplying said saloon with another bread-knife for the use of plaintiff in cutting bread, the defendant's agent and employee, to-wit, the steward, ordered this plaintiff to cut and slice bread with said butcher-knife; that the plaintiff, in slicing said bread with said butcher-knife at the time and on the occasion described aforesaid, and in obedience to the orders of said steward, cut off a portion of the index finger on his left hand just below the first joint; that prior to said steward ordering plaintiff to use said butcher-knife in cutting bread, plaintiff had not had any previous experience in the use of that type of knife in cutting and slicing bread.

"4. That the injuries received and the damage sustained by plaintiff, as hereinafter stated, were directly and proximately caused by the negligence of the defendant, its officers and agents in charge of the operations of said vessel, in each of the following particulars:

"1. The defendant, its officers and agents in charge of said vessel, failed to furnish plaintiff with a proper and suitable tool, to-wit, a bread-knife for use in cutting bread.

"2. The defendant, its officers and agents in control of the operation of said vessel, failed to supply said vessel with a sufficient number of bread-knives, so that, when one was misplaced and lost, it was not able to supply another to take its place.

"3. That said butcher-knife was an improper tool and dangerous for use as a bread-knife, and the defendant's agent, the steward, was negligent in improperly ordering plaintiff to use the butcher-knife, instead of a bread-knife in cutting bread.

"5. That as a direct and proximate result of the defendant's negligence aforesaid, plaintiff received and suffered injury to the index finger on his left hand, to-wit, total loss of said index finger between the first and second joints thereof, and total and permanent loss of the use of said entire index finger; etc.

"6. Plaintiff alleges that his injuries, as aforesaid, occurred in the course of his employment as a seaman in the employ of the defendant on said S/S 'Cardonia', an American vessel, and that he is entitled to recover in the court in which this suit is filed his damages sustained as

aforesaid, under the provisions of Title 46, Section 688, of the U. S. Code (the Merchant Marine Act of 1920) commonly known as the 'Jones Act'."

In this court the parties agree that the action thus brought was one referable to, as well as within the purview of, the U. S. Merchant Marine Act of 1920, or the "Jones Act", as so expressly prescribed under, in the quoted petition.

They further appear to mutually concede that the controlling question presented here is, whether or not that petition stated a good cause of action, under such Federal Statute, for damages for negligence of the appellee and its employees toward the appellant, and that the rules therein recognized and applied with respect to the duty of a master to its servant, in such circumstances as appellant so alleges, should govern.

■ This being, as indicated, not the usual and ordinary case of the servant against the master for the consequences of actionable negligence in the common employments of every-day life, to which no special rules apply, but one controlled by the special relation of seaman and steamship master, as governed by the Federal "Jones Act", supra, it is obviously amenable to the rules inhering in and enjoined by that statute, rather than those appertaining to a master-and-servant relationship in general.

■ Under that statute, it seems settled that such a seaman as appellant was may recover for injuries received in the course of his employment resulting from the shipowner's negligent failure to furnish reasonable, safe, suitable, or proper appliances, or equipment. Howarth v. United States Shipping Board Emergency Fleet Corp., 2 Cir., 24 F.2d 374; Coast S. S. Co. v. Brady, 5 Cir., 8 F.2d 16; Slaney v. Cromwell, D.C., 38 F.2d 304; Panama R. Co. v. Vasquez, 271 U.S. 557, 46 S.Ct. 596, 70 L.Ed. 1085; 56 C.J., "Seamen", Section 653. And that is true, irrespective of the technical doctrine of seaworthiness; 56 C.J., "Seamen", § 653.

■ Further, under the requirements of that Act, it being amendatory of the pre-existing Federal Admiralty Law, the common law rules do not apply to such relationship of ship-owner and seaman, among other things, in that the seamen are bound to use the equipment or appliances which the owners furnish for them to do the particular work with, and, in turn, the owners are, for their part, bound to furnish and maintain equipment and appliances reasonably free from defects, as well as reasonably proper and suitable for the special kind of work being done; in this respect, such employers of seamen, while not insurers of the latter's safety, are bound by the requirements of the Act to a much higher degree of care than is required of employers of mere shore-servants; Storgard v. France and Canada S. S. Corp., 2 Cir., 263 F. 545, certiorari denied 252 U.S. 585, 40 S.Ct. 394, 64 L.Ed. 729; 56 C.J., "Seamen", §§ 682 and 686.

■ The two Howarth and Coast Steamship Company cases, just cited, are quite similar in ultimate purport and legal reaches to the cause at bar; there the brick in the former and the flat wrench in the latter, like the unusually large and heavy butcher-knife in this instance, were not defective implements of their kinds, and were in good repair, but neither one was suitable for the purpose for which it was furnished to and used by the seamen; in consequence, the courts in both instances held that the question whether such appliances were reasonably proper and suitable for the particular work they were furnished for were questions of fact to be determined by the jury. The rationale of the reasoning was that the tool furnished should be reasonably safe and suitable for the particular work the servant was required to do with it—not that it should be good only under ordinary circumstances—and that the servant had a right to assume, in the absence of knowledge on his part to the contrary, that when the master furnished him an implement, with directions to him to use it in doing a specific piece of work, that it was reasonably safe, suitable, and adapted to the doing of that particular work; and that if, in using such an appliance, by his master's order, he was injured by reason of its not being safe and not being adapted to the accomplishment of the work for which it had been furnished him, the master was liable to him in damages for the consequences. That, indeed, is the rule applied quite generally to master-and-servant relationships. Smith v. Gulf, W. T. & P. Ry. Co., Tex.Civ.App., 65 S.W. 83; Missouri K. & T. Railway Co. v. Hannig, 91 Tex. 347, 43 S.W. 508; Shearman & Redfield, "Negligence", § 194; Garnett v.

Phœnix Bridge Co., C.C., 98 F. 192; Geloneck v. Dean Steam Pump Co., 165 Mass. 202, 43 N.E. 85; 29 Tex.Jur., "Master and Servant", page 177, paragraph 98.

■ The appellant here, so grounding his cause upon the "Jones Act", insists that when, under the general demurrer, all reasonable intendments are read into his petition, in consonance with the provisions and implications of that Federal Statute, it must be held that the pleadings did state a good cause of action.

This court is constrained to agree with him, upon these, among other, considerations:

(1) The implications in, along with all reasonable intendments in favor of, the quoted averments did not, as a matter of law, make of this declared-upon cause of action the usual instance of a master's having furnished the servant a common-ordinary simple tool, with which to do a work that—by common knowledge—the heavy and overlarge butcher-knife was appropriate for doing, such as was the scythe for cutting weeds in Post v. Chicago, etc., R. Co., 121 Mo.App. 562, 97 S.W. 233; this being the special relation arising out of U. S. Code Annotated, Title 46, Sec. 688, supra, and the knife being specifically declared to be unusual, unfit, inappropriate, and dangerous.

(2) The appellant's method of handling the butcher-knife could not, as a matter of law, be said to have been the proximate cause of his injury; because there was no averment of just how the accident happened, nor what particular thing caused it, hence it must here be assumed that he used the instrument furnished him in the proper way. In this detail this cause differs from all those cited by appellee's able counsel, in which the courts so held, either on the facts found from evidence, like in The Tawmie, 5 Cir., 80 F.2d 792, or from averments to that plain effect, as in Post v. Chicago, etc., R. Co., supra.

(3) It is inept to say, as the appellee does, that the petition in suit "fails to allege that such injury was the natural and probable result of the negligent act of the defendant, or that defendant should have foreseen the injury", because, by every reasonable intendment, it does so allege in essential purport and effect in its quoted paragraph (4), in charging that the injuries were directly and proximately caused by the negligence of the defendant in charge of the operation of the vessel, in each of the three specified particulars; these, together, reasonably comprehend the element of foreseeability upon the appellee's part.

As presaged supra, this court is unable to see eye to eye with the appellee in concluding, as it earnestly and ably does, that the two cases already commented upon, that is, The Tawmie, 5 Cir., 80 F.2d 792, and Post v. Chicago, etc., R. Co. 121 Mo. App. 562, 97 S.W. 233, are the nearest ones extant to the cause at bar; for the reasons above suggested, it is not thought that either of these causes on its facts is analogous to this one; in the first place, The Tawmie was not only a trial on the evidence, wherein the court found both that the spray-gun was not defective and that the seaman's act in pushing the plunger forward again, after the gun was obviously out of order, was the sole proximate cause of his injury; but further, that suit itself was not one under the "Jones Act" founded on negligence, as is this case, but was one in rem against the ship itself, based on unseaworthiness, consisting of an alleged defective spray-gun as a part of its equipment. In that situation, had unseaworthiness as so declared upon been found under the facts to have existed, liability for resulting injuries to the seaman would have followed as a matter of law, without reference to negligence; The H. A. Scandrett, 2 Cir., 87 F.2d 708, 710; and Carlisle Packing Co. v. Sandanger, 259 U.S. 255, 42 S.Ct. 475, 66 L.Ed. 927.

That presents a far cry from the controlling features here, although both sorts of remedies, that is, one based on unseaworthiness, or defective condition of the vessel or its equipment, as that in The Tawmie case, and one founded upon negligence, as in this instance, were equally permissible under the Federal Statutes.

The dissimilarity to the Post case also appears, it is thought, first, from the fact that it was not an action within the purview of this Federal Statute at all; second, while it was based on the sustaining of a general demurrer to the appellant's pleadings, the court determined—from a fair construction of the averments themselves—two specific inferences that are negatived here, to-wit: (1)That the scythe there furnished for the cutting of the weeds "on a slanting bank on said railroad and right-of-way" was the usual, habitual method employed and implement

furnished for that specific purpose—that is, the mere cutting of weeds on a slanting bank on a railroad right-of-way; (2) that the circumstances, as alleged, under which the injury occurred were specifically such as to require this construction of the court thereof: "That plaintiff's unfortunate injury obviously was not caused·by the insufficiency of the tool, but by his manner of delivering the stroke."

Wherefore, upon the whole, if—under the peculiar circumstances here obtaining, giving due effect to the applicable. provisions of the cited Federal Statute, and all reasonable intendments so both expressed in and fairly inferable from this appellant's position—reasonable men could differ, (1) over whether or not the appellee was negligent toward appellant in so furnishing and requiring him to use the butcher-knife, instead of a bread-knife, at a time when it had neglected to supply him with the bread-knife it had theretofore habitually furnished him with which to do such work, and when, to its knowledge, appellant "had not had any previous experience in the use of that type of knife in cutting and slicing bread"—and (2) over whether or not such furnishing and requirement had been a proximate cause of appellant's injury, the cause should have gone to the jury.

Under the holding that the situation presented was susceptible of both such differences, the judgment will be reversed and the cause remanded.

Reversed and remanded.