Argued March 23; reversed May 18, 1943

# CARLSON v. WHEELER-HALLOCK CO.
## (137 P. (2d) 1001)

Before BAILEY, Chief Justice, and KELLY, LUSK, BRAND and HAY, Associate Justices.

B. A. *Green,* of Portland (Green & Landye, of Portland, on the brief) for appellant.

*Erskine Wood,* of Portland (Wood, Matthiessen & Wood, of Portland, on the brief) for respondent.

HAY, J. The plaintiff and appellant, August G. Carlson, brought this action against the defendant-respondent under the Merchant Marine Act of 1920 (46 U. S. C. A., section 688), commonly called the Jones Act.

On April 27, 1940, the Steamship Samoa, under charter to defendant, was being loaded with cargo at the Port of Portland. Part of the cargo consisted of large rolls of paper, weighing approximately 1800 pounds each. These rolls were cylindrical in shape, and measured approximately 7½ feet in length by 3½ feet in diameter. The plaintiff, who was a member of the ship's crew, was an able-bodied and experienced seaman. At the time of his accident he was engaged in assisting in stowing rolls of paper in one of the ship's holds. The rolls were stowed standing on end, and, because of their shape, interstices or "holes" necessarily were left between them. After one tier of rolls had been stowed, a temporary floor of skid-boards was placed over it, and upon this temporary floor another tier of rolls was stowed. The skid-boards were approximately square, and were about 4½ feet wide. They were built up of two ¾-inch boards, superimposed upon each other, "cross-grained", and nailed together to form laminated boards approximately 1½ inches thick. The rolls were lowered into the hold in pairs and thence, by means of an ordinary two-wheeled hand truck, each roll was wheeled to the place where it was to be stowed. The truck was wheeled over the temporary floor of skid-boards. Because of the great weight of the rolls, four men were needed to operate the truck. One man wheeled it, one man on either side steadied the load, one man stood by to put wooden blocks behind the wheels, in order to hold the truck in position while the load was being tipped.

A skid-board had been placed in such position that one of its corners lay immediately over an interstice between rolls of paper. Plaintiff and his fellows brought the truck to a standstill with one of its wheels resting upon the corner in question, preparatory to unloading a roll of paper therefrom. Plaintiff was engaged in blocking the wheel, when suddenly, without warning, it broke through the skid-board and dropped some five inches, tipping the truck sidewise and throwing the roll of paper upon him, whereby he was knocked down and suffered injuries to his left foot and ankle.

Plaintiff charged the defendant with negligence, (1) in furnishing him with defective and unsafe equipment, in that the temporary flooring, (which he calls a "sliding floor"), was worn through constant use, and the boards were weakened to the extent that it would not sustain the weight of said truck and paper; (2) in not inspecting the "sliding floor", and in placing skid-boards of insufficient strength to hold the weight of the truck and paper over the holes between the rolls; (3) in not warning plaintiff of the dangers attendant upon working with said defective equipment; and (4) in causing and ordering plaintiff to work in an unsafe place, as aforesaid, when defendant knew, or by reasonable diligence could have known, that the condition of the floor was "unseaworthy".

The defendant made general denial of the allegations of negligence attributed to it, and alleged affirmatively that plaintiff was employed by it as an experienced seaman, competent to perform the duties assigned to him, and to exercise care for the safety of himself and others with whom he worked, and that, in accepting employment with the defendant, plaintiff assumed all the usual and ordinary risks of his calling. The defend-

ant alleged further that, if plaintiff sustained an accident and injuries as alleged, they were (1) the result of the usual and ordinary risks of his occupation as a seaman, which he assumed; and (2) caused by his own sole negligence in not exercising reasonable care and caution for his own safety, in allowing the roll to fall, in not keeping himself in a position of safety in case it should fall, and in not getting out of its way and avoiding it when it fell.

On the trial, after plaintiff had rested his case, defendant moved for a directed verdict in its favor on the ground that there was no substantial evidence of any negligence on its part, as pleaded in the complaint. Plaintiff thereupon requested and received permission further to amend his amended complaint, by amplifying his specifications of negligence, following which the court permitted the case to be reopened, and plaintiff submitted additional evidence. He having again rested, defendant renewed its motion for a directed verdict, which was denied.

The jury found its verdict for plaintiff in the sum of $2050, upon which judgment was entered. Thereafter, the defendant, under the provisions of section 6-707, O. C. L. A., as amended by Oregon Laws, 1941, chapter 309, moved for judgment notwithstanding the verdict. The motion was allowed, and the court set aside the original judgment and entered judgment for defendant. From this judgment, the plaintiff has appealed to this court.

■ This action, being based upon section 33 of the Merchant Marine Act of 1920, is founded upon negligence, of which plaintiff has the burden of proof. *American Pacific Whaling Co. v. Kristensen,* (C. C. A. 9), 93 F. (2d) 17, 19; *Wychgel v. States Steamship Co.,*

135 Or. 475, 296 P. 863; *Pittsburgh S. S. Co. v. Palo,* (C. C. A. 6), 64 F. (2d) 198; *De Zon v. American President Lines, Ltd.,* 318 U. S. 660, 63 S. Ct. 814, 87 L. Ed. 1065, April 5, 1943.

■ The standard of care imposed upon defendant under the circumstances in this case is that of reasonable or ordinary care, having regard to the circumstances. The measure of the shipowner's duty in this respect does not vary, but, of course, the degree of care must be adjusted to the risk involved. *Missouri Pac. R. R. Company v. Aeby,* 275 U. S. 426, 48 S. Ct. 177, 72 L. Ed. 351; *Delaware, L. & W. R. R. Company v. Koske,* 279 U. S. 7, 49 S. Ct. 202, 73 L. Ed. 578; *Haddix v. O'Brien,* 80 F. (2d) 792; *Wychgel v. States Steamship Co.,* supra.

■ Defendant takes the position that plaintiff failed to produce sufficient evidence of negligence within the allegations of his complaint. This was the ground upon which the court granted its motion for judgment notwithstanding the verdict, and is the major question for discussion upon this appeal. Sufficient evidence, in this connection, means substantial evidence. *Lieflander v. States Steamship Co.,* 149 Or. 605, 610, 42 P. (2d) 156.

Save for the happening of the accident itself, it must be conceded that there was no proof of the first specification of negligence, that of furnishing plaintiff with defective and unsafe equipment.

■ Unless the circumstances were such as to warrant the application of the res ipsa loquitur rule, the mere happening of the accident is not proof of evidence of negligence. Defendant cites a number of authorities in this connection, some of which we shall review briefly.

*Patton v. Texas and Pacific Railway Co.,* (1901), 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361, involved an injury to a locomotive fireman through the turning of an iron step which he used in descending from a locomotive engine. There were circumstances tending to exculpate the defendant. For example, it was shown that the nut which held the step in place was properly screwed on before the engine started upon that particular journey. Plaintiff himself, who assisted in the work, so testified. Moreover, at the time of plaintiff's injury, to suit his own convenience he had gone to work upon the locomotive during his own free time, while the engine was in the roundhouse for the purpose of being inspected and repaired, of which fact he had knowledge. He had ample opportunity to defer his own work until after such inspection and repair, and should have done so.

In *Kunschman v. United States,* (C. C. A. 2, 1932), 54 F. (2d) 987, a man was killed while in the performance of his duty as assistant engineer upon a motorship. The case holds that plaintiff must prove that his injury was caused by negligence chargeable in law to the employer. A Diesel engine which had been installed in the ship exploded while in use, and it appeared that the explosion occurred by reason of defective work which was performed upon the engine by an independent contractor. The owner, however, had supervised the work of the contractor. It was held that the primary duty was on the ship owner to provide a safe engine, in the fulfillment of its obligation to the deceased to furnish him safe appliances with which to work.

*Duntley v. Inman,* (1902) 42 Or. 334, 70 P. 529, 59 L. R. A. 785, was based upon the death of a man who had been employed by the defendant to run a planer. It

was his duty to start up the machine and run lumber through it, and see that it was kept in good condition. If he found anything amiss with it, it was his duty to report to the foreman. The planer was operated by a belt running on a fixed iron pulley upon a revolving shaft. There was also a loose pulley on the shaft, to which the belt was transferred when the machine was idle. The employee undertook to transfer the belt from the loose pulley to the tight one, for the purpose of starting the machine, whereupon the tight pulley flew in pieces, and the man was killed by being caught by the loosened belt and drawn into the moving machinery. This court said that the happening of the accident might perhaps tend to show that the machinery was defective, but that that alone was not sufficient to entitle the plaintiff to recover. He should have gone further, and shown that the defendant had notice of the defect, or, by the exercise of ordinary care, should have known of it. The case was decided prior to the passage of the Oregon Employers' Liability Act of 1910, at a time when courts were just beginning to consider the propriety of permitting the use of the res ipsa loquitur rule in common-law actions between employee and employer. As an authority in this case, the Duntley case is weakened by the fact that it was the decedent's duty to inspect the planer and report to the foreman anything about it which he found defective. Here, it does not appear that there was any such requirement imposed upon plaintiff. *Erickson v. Meier & Frank Co.*, (1933), 142 Or. 76, 86, 18 P. (2d) 207.

The second specification of negligence is that defendant failed to inspect the "sliding floor", and placed skid-boards of insufficient strength to hold the weight of the truck and paper.

Again it must be conceded that, unless res ipsa loquitur applies, there is no substantial evidence to support this claim of negligence. In *Finn v. Oregon W. P. & Ry. Co.*, (1908), 51 Or. 66, 93 P. 690, it was held that, in an action for injuries because of defective machinery, the plaintiff must prove not only the accident and the resulting injury, but that the defendant knew of the defect, or, in the exercise of due care, should have known of it. The only evidence of negligence in the case was that a chain broke while being used by plaintiff and his co-employees, but whether it broke because it was defective, was not sufficient for the purpose intended, or was improperly used or put to unnecessary strain, was not shown. It was held that plaintiff had failed to prove negligence on the part of the defendant. Here, again, is a case which was decided prior to the adoption of the Oregon Employers' Liability Act. The opinion does not even mention res ipsa loquitur.

■ It is argued that plaintiff and his fellows, all of whom were experienced and competent seamen, inspected the skid-boards before they placed them in position, and that the second mate inspected the "sliding floor" after it was laid. It does not appear, however, that it was any part of plaintiff's duty to inspect the skid-boards, whereas it was most certainly the mate's duty. The mate made no more than the most casual inspection. In *Southern Ry. Co. v. Derr*, (C. C. A. 6, 1917), 240 F. 73, 75, it was said that the standard of reasonable care may require a detailed inspection of the apparatus or instrumentality which is to be used by the employee. That case involved the breaking of a piece of ordinary 56-pound railroad rail, which was being used as a skid in the transfer of a steam boiler from one railroad car to another. The

rail broke, causing injuries to plaintiff, and the proof failed to show the reason for the breaking. Although the broken rail was apparently available to the plaintiff as evidence, (in fact, he produced a piece of it in court) the court commented that there was no evidence as to whether it had been used much or little, to what use it had been subjected, or other reason why defendant should have known that it was not of sufficient strength for the use to which it was put. It was held that plaintiff's proof failed to show a substantial basis upon which an inference of negligence could be supported. This is another border-line decision, handed down at a time when res ipsa loquitur was being given only grudging and restricted recognition in employee-employer cases.

■ Upon the third specification, that defendant was negligent in failing to warn plaintiff of the dangers attendant upon working with defective equipment, no evidence appears to have been offered. It is obvious that defendant did not know that the skid-board was defective.

The fourth specification of negligence is that of causing and ordering plaintiff to work in an unsafe place, etc., when defendant knew, or by reasonable diligence could have known that the condition of the floor was unseaworthy. This involves the same principle as the first specification. Other than the happening of the accident, there was no proof of negligence in this respect. However, if res ipsa loquitur is applicable to the facts and circumstances of the case, then it was not necessary for plaintiff to prove specifically any particular specification of negligence alleged in his complaint. *Boyd v. Portland Electric Co.*, (1901), 40 Or. 126, 131, 66 P. 576, 57 L. R. A. 619, 7 Am. Elec. Cas. 661.

The question is whether or not plaintiff made a sufficient showing of negligence to establish a prima facie case justifying the application of res ipsa loquitur. But first, let us consider whether that rule may be invoked in cases of this sort.

*Leatham Smith-Putnam Nav. Co. v. Osby*, (C. C. A. 7, 1935), 79 F. (2d) 280, was a suit by the owner of a vessel to establish its exemption from, or limitation of, liability as owner in respect of actions at law which had been filed against it under the Jones Act, for damages for injuries resulting from an explosion of gases which had accumulated in dangerous quantities aboard the owner's ship. There was no direct proof of the cause of the explosion. Evidence was introduced with respect to the room in which the explosion occurred, its dimensions, and certain piping and apparatus which it contained. Moreover, the evidence described generally that part of the ship within which the room was located. There was also evidence that, before the explosion, the odor of gas had been noticed, that an investigation was made, and certain work done with a view to remedying the situation. The court held that there must be proof of an accident, and that it occurred out of the ordinary course of events. The presence of explosive gases, the absence of any other explosive substance, prior difficulty with accumulation of gases, and the fact that an explosion could not have occurred except through some extraordinary course of events, created a situation of such an unusual character as to justify an inference that the accident resulted from the negligence of those having possession or control of the premises. The court stated specifically (p. 284) that the rule of res ipsa loquitur is applicable in actions brought by employees under the Federal Employers' Liability Act;

that defenses based upon the fellow-servant rule and upon contributory negligence have been abolished by that Act, except that evidence of contributory negligence may be offered in mitigation of damages; and consequently that res ipsa loquitur is unhampered in its application.

This court has applied res ipsa loquitur in an action arising under the Jones Act. *Wychgel v. States Steamship Co.,* (1931) 135 Or. 475, 483, 296 P. 863. In that case Mr. Chief Justice HENRY J. BEAN, who wrote the opinion, remarked (p. 479) that, the plaintiff having elected to bring his action under section 33 of the Merchant Marine Act of 1920 and the Federal Employers' Liability Act, his rights and obligations depended upon principles of law as interpreted and applied in the federal courts. Upon such principles, while recognizing that the rule should be applied with circumspection, he held that it may be invoked in such an action.

In *Carpenter v. Baltimore & O. R. Co.,* (C. C. A. 6, 1940), 109 F. (2d) 375, 378, the court applied the rule of res ipsa loquitur in an action by an employee against his employer under the Federal Employers' Liability Act. See also *Vigor v. Chesapeake & O. Ry. Co.,* (C. C. A. 7, 1939), 101 F. (2d) 865, 869; *Terminal R. Assn. v. Staengel,* (C. C. A. 8, 1941), 122 F. (2d) 271, 273, 136 A. L. R. 789; *Lowery v. Hocking Valley Ry. Co.* (C. C. A. 6, 1932), 60 F. (2d) 78, 79; *Southern Ry. Co. v. Derr,* (C. C. A. 6, 1917), 240 F. 73, 75-6. The last mentioned case is illustrative of the hesitancy with which the rule was at first applied in employee-employer cases. The court remarked that the abolition of the fellow-servant defense by the Federal Employers' Liability Act raised "strong ground for saying that the old

decisions, to the effect that the maxim can have no application in an employee's action, are not here to be observed."

■ Relying upon one case only *(Louisville & N. R. Co. v. Grant,* (1928) 223 Ky. 39, 2 S. W. (2d) 1063), the respondent suggests that it is doubtful if res ipsa loquitor can apply to a case under the Federal Employers' Liability Act. In that case a brakeman had been injured by being struck by an object which, as he claimed, had projected from a passing train. The court said, in part,

> "* * * *This court* applies the maxim as between master and servant, but only in extreme and very much circumscribed cases, and in a very restricted sense." (Emphasis ours.)

Because the injury was caused by an unknown instrumentality, the court held that the maxim had no application. There is nothing in the opinion which would indicate that res ipsa loquitur may not be applied under any circumstances in a Federal Employers' Liability case. The decision was based upon lack of sufficient evidence of negligence, "in kind or amount", upon which to invoke the rule. (The court admitted, however, that the maxim was itself a "kind" of evidence and also some "amount" of evidence.) As we understand the court's reasoning, it felt that the maxim should not apply, because there was lacking a sufficient showing of any defective condition upon the passing train, upon which the defendant's negligence might have been predicated.

> "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management

use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

*Scott v. London Docks Co.*, 2 Hurl & C. 596.

See also *Esberg Cigar Co. v. Portland,* 34 Or. 282, 55 P. 961, 43 L. R. A. 435, 75 Ann. St. Rep. 651; *Boyd v. Portland Electric Co.,* supra. The rule as above stated has been modified to the extent that most courts now require a showing that the defendant had exclusive control of the instrumentality which caused the accident. *Phillipsen v. Hunt,* 129 Or. 242, 276 P. 255; *Teel v. Steinbach Estate,* 135 Or. 501, 296 P. 1069; *Dittert v. Fischer,* 148 Or. 366, 36 P. (2d) 592; *Atlas Powder Co. v. Benson,* 287 F. 797; *San Juan Light & Transit Co. v. Requena,* 244 U. S. 89, 32 S. Ct. 399, 56 L. Ed. 680; 45 C. J., Negligence, sec. 781, p. 1214.

In the present case, the evidence showed that the skid-boards were procured by the respondent; that the second officer was in charge of the plaintiff and his fellows in their work; that the skid-boards were laid down as directed by that officer, and that the men had no freedom of choice as to where they should be laid; that rolls of paper could not be stowed in the required manner without leaving interstices between them; that the men tried to avoid covering these interstices with the corners of boards, but that it was not possible for them to do so always; that they did the best job they could; and that the witness Albrecht thought that they did a good job.

■■ While it is true that the plaintiff was an experienced seaman, (he apparently resented any implication that he needed any one to tell him how to perform the work in which he was engaged at the time of the accident) nevertheless we think that the court may take

judicial notice that the stowage of cargo is a technical operation, the supervision of which is not usually delegated to common sailors. It is an operation for which the mate is usually responsible; that, as one witness said, is "what he is paid for". The facts do not justify the distortion of the situation into one in which the shipowner and the injured employee had joint control of the instrumentalities which brought about the accident. Apparently no one knew which of the men laid down the particular board which broke. All that appears is that a board, which was intended to support a two-wheeled truck loaded with a weight of approximately 1800 pounds, broke while it was being used for the purpose for which it was intended, and while it was not being subjected to any extraordinary strain. The truck, its load and the skid-board, were all under the exclusive control of the defendant shipowner. The plaintiff was in effect a mere ordinary laborer, although having experience and manual dexterity in the work in which he was employed, and he had no duty to inspect the skid-boards as they were laid down.

The defendant cites the case of *The Mercier,* (1933), 5 F. Supp. 511. In that case, however, the gear which was the instrumentality which brought about the injury was not in charge of the ship's officers, but of a stevedoring company, and this was held to be an insuperable objection to the application of the doctrine of res ipsa loquitur, as it was apparent that the gear was not in the exclusive control of the ship. Judge James Alger Fee, who wrote the opinion, said that the mere breaking of the gear was not a sufficient circumstance upon which to apply res ipsa loquitur, and that the libelant should have proved that the break was the result of a defect of which the officers "or crew" knew or should

have known. He said, however, that the duty of exercising reasonable care implied the duty to inspect, and that "a break in gear in proper use and under no unusual strain, * * * is circumstantial evidence of negligent inspection". He was of the opinion that the fault lay between the injured person and the stevedoring company, and intimated, in effect, that had the action been against the stevedoring company, the rule of res ipsa loquitur might have been applied.

"* * * All that the plaintiff should be required to do in the first instance is to show that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of, the thing doing the damage; that the accident was of a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence. When he has shown this, he has cast a burden on the defendant, who may then proceed to show that the accident was occasioned by 'vis major,' or by other causes for which he was not responsible."

Lamar, J., in *Chenall v. Palmer B. Co.,* 117 Ga. 106, 43 S. E. 443, cited in Wigmore on Evidence, 3d ed., section 2509, vol. IX, p. 384.

The defendant also cites the case of *Asprodites v. Standard Fruit & Steamship Co.,* (C. C. A. 5, 1940) 108 F. (2d) 728. In that case, the plaintiff's intestate was the engineer in charge of and had control over the appliances which caused the injury. There was nothing to show that his own default was not the cause of the accident, and therefore it would appear that the case is not in point here.

It is quite true that, as defendant contends, the mere happening of an accident does not, in itself, speak of negligence on the part of the defendant. Defendant cites, in this connection, *Smith v. United States,* (C. C.

A. 5, 1938) 96 F. (2d) 976. In that case it appeared that inspection by a ship's carpenter would not have disclosed as much concerning a defective batten as the seaman who actually handled the batten in the course of his work could have learned. It is somewhat difficult to follow the rationale of the decision. The seaman was injured while engaged in taking down cargo battens or sweat boards, and it was held that there was no duty upon the shipowner to inspect and repair battens which were about to be taken down. The court said that the rule of res ipsa loquitur was not applicable in any case, unless the facts and circumstances reasonably point out the wrongdoer, and exclude other probable causes of the injury. Of course, if an inspection would have been unavailing, none need have been made, but it may reasonably be inferred, in the present case, in the absence of explanation by defendant, that the breaking of the board was due either to the board itself being defective, or to the fact that it was of insufficient strength for the purpose for which it was used. These are matters which a proper inspection should have disclosed.

Defendant says that there is no room for the application of res ipsa loquitur in this case, because the plaintiff's own evidence explains the reason for the accident, (citing *San Juan Light & Transit Co. v. Requena*, supra). This explanation, according to defendant, showed that the accident was brought about by one wheel bearing all of the weight of the truck and paper, which placed too much strain upon the corner of the board.

It must be admitted that, taking at its literal meaning a part of the language used by one witness, one might come to the conclusion that, from some mysteri-

ous cause, suddenly and without warning the whole weight of the loaded truck was thrown upon one wheel. The witness, in explaining what happened, said:

> "Carlson was putting the blocks under, and just then the truck stopped, and naturally it put all the weight on the wheel on the left side. The corner of the skid broke and the paper shifted to the left and I couldn't hold it, and it came off and landed on his foot."

On cross-examination, he testified further, as follows:

> "Q * * * Have you ever been a carpenter, Mr. Albrecht?
> A Yes, sir. * * *
> Q (By Mr. Wood) And sometimes even a piece of lumber that looks pretty good will break when an unexpected strain comes on it?
> A No.
> Q How do you account for this piece breaking?
> A Too much strain on this corner from the one wheel. The one wheel is only about four or five inches wide.
> Q *If the truck had been wheeled closer to the center then it would not have broken?*
> A *Most likely not."*
> (Emphasis ours.)

It seems to us that the italicized portion shows that the accident happened because the board was not sufficiently strong to sustain the weight of the loaded truck when one wheel thereof rested upon its corner. The load thus placed upon the board was not an extraordinary or unexpected strain, but was, on the contrary, exactly the strain which it was intended to carry. No doubt, in the statement first quoted above, the witness might have used more precise language, but it is evident to us (and must have been to the jury) that he did not intend to say that, in some mysterious manner,

the whole weight of the truck was suddenly thrown upon one wheel. We think rather that his testimony clearly indicates that the corner of the board was not strong enough to sustain the weight imposed upon it, and that, when the board broke down and the wheel dropped, naturally all of the weight was shifted to one side of the truck.

The defendant did not produce the broken skid-board on the trial of the case, and the plaintiff argues that such nonproduction justifies the inference that it was defective. In this connection, he cites the following cases: *The Colon,* (C. C. A. 2, 1918) 249 F. 460; *The Bolton Castle,* (C. C. A. 1, 1918) 250 F. 403; *Colvin v. Kokusai Kisen Kabushiki Kaisha,* (C. C. A. 5, 1934) 72 F. (2d) 44; *Scottish Nav. Co. v. Munson S. S. Line,* 60 F. (2d) 101; *The John and Frederick,* 10 F. Supp. 666. In all of those the defendants produced evidence tending to exculpate them from the charge of negligence. In this case, however, it will be remembered that the defendant offered no evidence whatever upon that point. As pointed out in *McDuffee's Admx. v. Boston & Maine R. R.,* 81 Vt. 52, 69 A. 124, 130 Am. St. Rep. 1019:

> "* * * It is only when a party has introduced evidence upon an issue raised in the case by his own evidence that a presumption arises against him for a failure to produce evidence peculiarly within his knowledge and possession."

See also *Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina,* 32 F. (2d) 209; 31 C. J. S., Evidence, pp. 849-50. We are not dealing with an instance of a party who produced weaker evidence when stronger was within his power. Assuming that the board was available to defendant at the time of the trial, it was not obliged to produce it. Of course, if it had given

evidence tending to show that the board was not defective, then its nonproduction of the board itself might have raised an inference against it.

■ Because of the rigorous disciplinary rules under which he is obliged to work, the relative hardships which he must undergo, and the exigencies of his calling, the law looks upon the seaman with especial favor, and, in actions brought by him against his employer to recover damages for personal injuries, has taken away the defense of negligence of fellow-servant, and has greatly restricted the defenses of assumption of risk and contributory negligence. *McCauley v. Pacific-Atlantic S. S. Co.,* 167 Or. 80, 95, 115 P. (2d) 307; *Socony Vacuum Oil Co. v. Smith,* 305 U. S. 424, 59 S. Ct. 262, 83 L. Ed. 265; *Armit v. Loveland,* 115 F. (2d) 308; *Maldonado v. Lykes Bros. S. S. Co.,* 142 S. W. (2d) 544.

■ Moreover, the law imposes upon the shipowner the absolute and nondelegable duty of furnishing a seaworthy ship and reasonably safe equipment and appliances, and, if a seaman suffers injury through the failure of the owner to perform such duty, the owner is liable to him in damages. *The Osceola,* 189 U. S. 158, 23 S. Ct. 483, 47 L. Ed. 760; *Cleveland-Cliffs Iron Co. v. Martini,* 96 F. (2d) 632; *Wychgel v. States S. S. Co.,* supra; *McCauley v. Pacific-Atlantic S. S. Co.,* supra.

The defendant seeks to distinguish the Wychgel case from the case at bar, pointing out that there it was not disputed ''that the hatches (hatch covers) were under the exclusive control of the defendant,'' and ''under the management of defendant or its servants, other than the plaintiff.'' They say that here the defendant did not have exclusive control of the skidboards, meaning, we presume, that the fact that plain-

tiff, with others, performed the work of laying the boards down to form the temporary floor, gave him a measure of control over the boards. With this view we are unable to concur. The manner of stowing the rolls of paper, involving the leaving of interstices between rolls, was adopted by the ship's officer in charge of the work. The four-man crew, working in pairs, laid down the skid-boards according to a method and pattern which the officer ordered them to follow, and it was impossible for them to avoid covering some of the interstices with corners of skid-boards. Plaintiff had neither management nor control of the operation or of the individual boards. He was merely a subordinate laborer. Management and control, both of the operation and of plaintiff's acts in connection therewith, were exclusively in the shipowner, through its agent, the second officer of the ship.

In so far as concerns any inspection that plaintiff may have made of the skid-boards while they were being laid down, even if any board had been obviously defective, and he knew it but nevertheless laid it down, that fact would not exculpate the defendant, but would merely raise the question of contributory negligence. *Cleveland-Cliffs Iron Co. v. Martini,* supra. Plaintiff was not required to perform defendant's duty of inspection of the boards; he himself did not even lay all of them; and evidently he had neither time nor opportunity to observe or inspect them as thoroughly as the second officer did or should have done. *Wychgel v. States S. S. Company,* supra. Incidentally, the circumstances of the case, involving the wheeling of very heavy loads over a flooring of loose boards, without completely solid support underneath, created a condition as dangerous as that involved in the Wychgel case.

■ We are of the opinion that the defendant had the exclusive control and management of the operation and of the appliances which caused plaintiff's injuries in this case; that the accident was of a kind which, in the ordinary course of events, would not have happened if the defendant had used due care; and that the plaintiff made a prima facie case sufficient to invoke the application of the rule of res ipsa loquitur. *Wychgel v. States S. S. Co.,* supra. *The Montrose,* 186 F. 156; *The Schooner Robert Lewers Co. v. Kekauoha,* 114 F. 849; *The Remus,* 17 F. (2d) 948.

It follows that, in sustaining defendant's motion for judgment notwithstanding the verdict, and in entering judgment for defendant upon such motion, the trial court erred. The judgment is reversed, and the cause remanded, with directions to enter judgment for plaintiff upon the verdict of the jury.