Argued January 14, affirmed March 16, 1960

# MILDENBERGER *v.* CARGILL, INCORPORATED

350 P. 2d 413

*Edwin J. Peterson* and *Lamar Tooze,* Portland, argued the cause for appellant. On the briefs were Tooze, Kerr, Hill & Tooze.

*Nels Peterson,* Portland, argued the cause for respondent. On the brief were Peterson, Pozzi & Lent, and Donald R. Wilson, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN and DUNCAN, Justices.

PERRY, J.

The plaintiff John Mildenberger brought this action against the defendants Cargill, Incorporated, a corporation, and W. Baxter, for personal injuries alleged to have arisen while in the employment of the defendant Cargill, Incorporated, and recovered a judgment against the defendant Cargill, Incorporated. From this judgment defendant Cargill, Incorporated, appeals.

For convenience in this opinion, we will hereinafter refer to Cargill, Incorporated, as defendant, and to W. Baxter as Baxter.

The record discloses that plaintiff was employed by defendant July 7, 1956, the morning he sustained the injury complained of. Plaintiff and two fellow employees, William Baxter and Roscoe Border, were engaged in unloading wheat from defendant's storage tank located at terminal No. 4 in Portland, Oregon. This tank shall hereafter be referred to as tank No. 3. There was also working in and about tank No. 3 one Elrey P. Noah, who was using a machine referred to as a "sucker" used "to suck the grain out of the tank" when the grain therein is real low.

The operation involved moving wheat within the tank to an opening in the side, from which point it was carried by a conveyor belt into a nearby elevator. In order to move wheat to the opening, a scoop, attached to power-operated cables, was employed. One of the cables led through a block temporarily secured to the tank's vertical steel ribs. The scoop could be maneuvered about the tank manually by moving the block from one rib to another. This proved only partially effective because, as the tank emptied and wheat approached floor level, the scoop, in its straight forward movement, left rows between the ribs untouched. Ropes were attached to each side of the scoop for the purpose of moving this portion of the wheat. While Border ran the scoop from a portable control panel, his colleagues Baxter and plaintiff pulled it from side to side to gather the wheat in rows otherwise out of reach of its straight forward and back pattern. While so engaged, plaintiff was injured when the rope attached to the scoop broke, resulting in his loss of balance and consequent fall against one of the tank ribs.

Plaintiff testified that he and Baxter decided the wheat was low enough in the tank to warrant use of ropes on the scoop; that Baxter went to get a rope and upon his return tied it on the scoop; that the rope broke and plaintiff fell; that immediately after his fall Baxter tied that portion of the rope remaining in his hands back on the scoop.

Defendant's first and second assignments of error can be considered together. Both deal with a question put to the witness Noah and his answer:

"Q Is that [Exhibits 92 and 93] the rope which you got?

"A It is the same kind of rope that I got, yes."

The claim of error is, first, the trial court permitted the witness to answer the question over defendant's objection, and, second, the trial court failed to strike all of the witness's testimony relative to these offered, but refused, exhibits marked 92 and 93.

■ These offered exhibits were cotton rope, dirty gray in color, considerably frayed, giving the appearance of having had considerable hard use. The defendant's objection to the question is as follows:

"I will object to it on the ground that it will be entirely speculative on the part of this witness because of the fact that his previous testimony was that there were two pieces or [sic] rope, one Manila and one cotton rope, and obviously he can't tell which of those pieces of rope was the particular rope, and it would open the field to speculation, and, therefore, it is objected to."

The defendant then contends that the "answer of 'yes' to this question could have been based on either of these possibilities:

"1. Noah desired to change his testimony to this: the ropes he got from the shop were both made of cotton; or

"2. Exhibits 92 and 93 formed one piece of rope on July 7, 1956, which was the one cotton rope which Noah took from the shop to the tank. This would permit an inference to be drawn of the most speculative kind that at some unknown time after Noah placed this single piece of cotton rope on the platform it was cut into two parts by some unknown person or broken in two in some unknown manner."

It was within the province of the defendant to dispel these possibilities as to the purpose of the witness's answer by cross-examination and it is, therefore, not in a position to complain.

■ After plaintiff had rested, the defendant moved that all of the evidence of the witness Noah with reference to exhibits 92 and 93 be stricken and the jury instructed to disregard such evidence, defendant's motion being as follows:

"At this time, your Honor, in view of the fact there is no evidence connecting the rope that was delivered, claimed to have been delivered by the witness Noah to the tank No. 3, no evidence connecting that rope with either of the defendants, I move that all of his evidence with reference to the rope, Exhibits 92 and 93, be stricken, and the jury instructed to disregard it."

The trial court denied the motion.

According to Baxter's testimony, he asked Noah to get some rope, but Noah refused and, therefore, Baxter went to the millwright's shop for the rope that was used. Noah testified that he was working outside tank No. 3 and when he made one of his appearances on the platform at the opening to the tank Baxter told him to get some rope; that he went to the millwright's shop and brought back two ropes, one manila and one cotton, which he placed on the platform outside the opening.

The defendant's principal contention seems to be that any reference to exhibits 92 and 93 was so speculative, as to having been furnished by the defendant and used by the plaintiff, that all testimony thereto should have been rejected.

We are unable to agree with this contention. The defendant by cross-examination of the plaintiff brought out the fact that these ropes were found in tank No. 3 on the evening of the day the plaintiff was injured. The plaintiff testified, without objection, that a few days before the trial a certain John Fougerouse

brought him these two proposed exhibits. On cross-examination by defendant the following occurred:

"Q Did Mr. Fougerouse, when you got those ropes out of his car, tell you where he had gotten the ropes?
"A Yes.

"Q Where did he say he got them?
"A He said he got them out at tank 3.

"Q And when did he say he got them?
"A The evening of the day that I got hurt.

"Q I see. And those are the ropes that you got from him?
"A Yes."

While the trial court refused to admit the ropes in evidence because of lack of positive identification, it appears to us that a proper foundation had been laid for the asking of the question. The answer was not exactly responsive to the question, but no motion was made to strike the answer upon that ground.

■ Finally, defendant contends the trial court erred in giving the following instruction:

"Under the Act [Employers' Liability Act] the employer is required to exercise the highest degree of care whereas under the common law the employer is required only to exercise reasonable care of the man of ordinary prudence. The only limitation which the Act placed upon the employer is the one that states that the efficiency of the apparatus or device shall not be impaired."

While this instruction is a correct statement of law, an examination of the issues here presented discloses that it has no bearing upon the case at hand.

No issue was presented relative to the use of "every device, care and precaution which it is practicable to

use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device." ORS 654.305. The sole issue was whether or not the rope which was furnished had been carefully selected, inspected and tested before furnishing the same for the use of the plaintiff.

■ In our opinion, the highest degree of care is not contemplated by the Act in the furnishing of the materials described in ORS 654.310(1), but applies to the structures or machinery to be used, for the words "structure, machine or other apparatus or device" alone are qualified by the phrase "limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device." ORS 654.305, supra.

■ In describing the duty of an employer to an employee in furnishing rope, ORS 654.310(1) provides:

"All metal, wood, rope, glass, rubber, gutta percha or other material whatever, is carefully selected and inspected and tested, so as to detect any defects."

The use of the word "carefully" in the statute as descriptive of the duty of an employer in this regard is used in its commonly understood meaning, and the test of whether or not the duty has been performed is settled by a determination of what a reasonably prudent person would have done in selecting, inspecting and testing the rope furnished, taking into consideration the purpose to which it was to be put and the danger therein involved. *Askatin v. McInnis & Reed Co.,* 67 Or 320, 135 P 322.

While the instruction complained of should not have been given, under the facts of this case it was not

prejudicial to the defendant. As above pointed out, there is evidence that the plaintiff was furnished a rope by the employer and while being used as intended this rope broke. This court has accepted the doctrine of res ipsa loquitur as applicable in the furnishing of "defective and unsafe equipment" and in failing to "properly inspect such equipment" as required under the Merchant Marine Act, 46 USCA § 688, (commonly called the Jones Act). *Carlson v. Wheeler-Hallock Co.,* 171 Or 349, 137 P2d 1001.

■ We are unable to find any sound basis for applying this rule under the Jones Act and denying it under the Oregon Employers Liability Act. Therefore, it seems the plaintiff made a sufficient showing of negligence in this case to justify application of the doctrine of res ipsa loquitur and cast upon the defendant the duty of showing that it had fulfilled its duties as commanded by the Act.

Since the record is devoid of any evidence that the defendant had performed any of the duties imposed upon it in selecting, inspecting and testing the rope, it became immaterial as to the degree of care required in doing these acts.

Judgment affirmed.